766 A.2d 632

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**John Walsh CASSIDY.**

**Misc. No. AG 7, Sept. Term, 2000.**

Court of Appeals of Maryland.

Feb. 12, 2001.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Deputy Bar Counsel for the Attorney Grievance Commission of Maryland, for Petitioner.

Carlton M. Green, of Greenbelt, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and RODOWSKY, LAWRENCE F. (Retired, specially assigned), JJ.

RAKER, J.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition with this Court for disciplinary action against John Walsh Cassidy, Respondent, alleging violations of the Maryland Rules of Professional Conduct. The Commis-

sion charged Respondent with violating Rules 1.1 (Competence),[1] 1.3 (Diligence),[2] and 1.4 (Communication).[3] We referred the matter, pursuant to Maryland Rule 16–709(b), to Judge Ronald D. Schiff of the Circuit Court for Prince George's County to make findings of fact and proposed conclusions of law. Following an evidentiary hearing, Judge Schiff concluded that Respondent violated Rules 1.3 and 1.4., but that Respondent did not violate Rule 1.1. Respondent filed an exception to Judge Schiff's conclusion that Respondent violated Rule 1.4. Bar Counsel took no exceptions to the findings or conclusions of the hearing judge.

## I.

Judge Schiff held an evidentiary hearing and filed a report setting out his findings and conclusions. We set forth his report.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

"This case comes to the Circuit Court for Prince George's County, Maryland by Order of the Court of Appeals of Maryland dated May 2, 2000. The Court of Appeals instructed this Court to make appropriate findings as to whether Respondent, John Walsh Cassidy, violated the Maryland Rules of Professional Conduct.

---

1. Rule 1.1 of the Maryland Rules of Professional Conduct provides as follows:
   A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

2. Rule 1.3 of the Maryland Rules of Professional Conduct provides as follows:
   A lawyer shall act with reasonable diligence and promptness in representing a client.

3. Rule 1.4 of the Maryland Rules of Professional Conduct provides, in pertinent part, as follows:
   (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
   (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

"Petitioner, Attorney Grievance Commission of Maryland ("Commission"), filed a Petition for Disciplinary Action against Respondent on May 1, 2000. The Commission alleges that Respondent violated Rules 1.1, 1.3 and 1.4 of the Maryland Rules of Professional Conduct. The Commission filed a Request for Admission of Facts and Genuineness of Documents. The enumerated facts, documents and attachments thereto were admitted without objection at the hearing on this matter.

## STANDARDS OF PROOF

"For disciplinary action to ensue, the burden of proof is on the Commission to establish Rules violations by clear and convincing evidence. *See Attorney Griev. Comm'n v. Kemp,* 335 Md. 1, 9, 641 A.2d 510, 514 (1994). Furthermore, an attorney in a disciplinary proceeding need only establish factual matters supporting the attorney's defense by a preponderance of the evidence. *See Attorney Griev. Comm'n v. Powell,* 328 Md. 276, 288, 614 A.2d 102, 108 (1992). After a hearing held on July 13, 2000, this Court makes Findings of Fact and Conclusions of Law as set forth below.

## FINDINGS OF FACT

"1. Respondent was admitted to the Bar of the Court of Appeals of Maryland on June 27, 1968. Respondent has carried on a law practice specializing in real estate matters.

"2. On or about April 29, 1998, Denise Glenn orally retained Respondent for the purpose of drafting and recording a new deed to her condominium. The new deed was to include a change in Mrs. Glenn's name of record from Denise Wilson to Denise Glenn. Respondent was also instructed to add Mrs. Glenn's husband, Walter Glenn, as a co-owner.

"3. Respondent quoted a fee of $100.00. The fee represented $75.00 to prepare the deed and $25.00 to record it.

"4. Respondent stated that the deed would be ready in approximately three weeks.

"5. Thereafter, Respondent marked up the deed and gave it to his secretary, Jeanette Rogers, to process according to his usual practice with respect to deeds.

"6. In or about July 1998, Mrs. Glenn telephoned Respondent's office inquiring as to the status of her deed. This was the first contact since the original meeting between Respondent and Mrs. Glenn on April 29, 1998. The individual with whom Mrs. Glenn spoke indicated that Mrs. Glenn must provide an additional $25.00 for a notary fee. Mrs. Glenn indicated that an additional fee was not discussed during the original meeting. Mrs. Glenn then asked that Respondent call her.

"7. Between June 1998 and December 1998 Mrs. Glenn placed several calls to Respondent's office but was never able to speak to him.

"8. In October 1998, Jeanette Rogers quit her job. Respondent was financially unable to immediately replace her.

"9. On November 4, 1998, Respondent was suspended from the practice of law for 18 months on an unrelated matter.

"10. On December 4, 1998, Mrs. Glenn, accompanied by her husband, Walter Glenn, visited Respondent's office inquiring about the status of the deed. Respondent explained to Mr. and Mrs. Glenn that he was unable to locate the deed. Respondent searched for the deed while Mr. and Mrs. Glenn were in the office but was unable to find it. He indicated that he would continue to search for the deed and would contact the Glenns in a short period of time. During this visit Respondent never disclosed his suspension from the practice of law.

"11. On January 4, 1999, Mrs. Glenn telephoned Respondent's office once again, inquiring about the status of the deed. The person with whom she spoke (not Respondent) hung up on her without giving any information. On January 8, 1999, Mrs. Glenn filed a complaint with the Attorney Grievance Commission.

"12. In February 1999, Mr. Glenn visited Respondent's office. Respondent indicated that he had not found the deed, and issued a $100.00 refund to Mr. Glenn. On April 3, 1999, Respondent forwarded an additional $200.00 to Mrs. Glenn.

"13. Following Respondent's April 3, 1999 reply to the Attorney Grievance complaint, Respondent found the marked-up deed tacked to a bulletin board, which was near Jeanette Rogers' desk, under a number of other papers.

"14. At no time during the representation did Respondent inform Mr. or Mrs. Glenn that he was suspended from the practice of law.

"15. With respect to other pertinent matters this Court also finds the following:

"(a) Respondent relied almost exclusively on his secretary to draft deeds and he did not employ any type of meaningful tickler system that would alert him to overdue matters.

"(b) With respect to the preparation of deeds Respondent turned over marked-up deeds to his secretary who would place them in a miscellaneous "ABC" file. This file was maintained alphabetically by case name, and was kept as an open file on or near the secretary's desk. The file included various types of matters, such as deeds and settlement papers. Respondent performed minimal monitoring of this file but remained available should the secretary have questions about the cases.

"(c) Respondent admits that he would not have known about the Glenns' lost deed had the Glenns not brought the matter to his attention.

"(d) Jeanette Rogers worked for the Crossroads Title Company who shared office space with Respondent. Jeanette Rogers, however, performed secretarial duties for Respondent. Ms. Rogers performed secretarial duties for Respondent for approximately three years.

## CONCLUSIONS OF LAW

"I.   Rule 1.1—Competence

Rule 1.1   of the Maryland Rules of Professional Conduct provides the following:

A lawyer shall provide competent representation to a client.   Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

"Petitioner relies on *Attorney Grievance v. Ober*, 350 Md. 616, 714 A.2d 856 (1998), as support for its assertion that Respondent violated Rule 1.1 in connection with the loss of Mrs. Glenn's deed.   In *Ober*, the Court of Appeals found that respondent violated Rule 1.1 by losing a client's file and failing to reconstruct it in a timely manner.   *See id.*, 350 Md. at 630, 714 A.2d at 863.   The Court reasoned that "the thoroughness and preparation reasonably necessary for . competent representation includes the proper management of case files."   *Id.* Furthermore, "[t]he loss of a file may substantially affect an attorney's ability to adequately prepare the client's case."   *Id.*

"Undoubtedly, the ability for an attorney to manage case files and implement procedures for reconstructing lost or incomplete files reflects upon the competence of the attorney.   In *Ober*, however, the Court was clear that the basis for the Rule 1.1 violation was not "solely on [r]espondent's loss of the file."   *Id.* Thus, it was the loss of the file coupled with respondent's failure to promptly reconstruct it that gave rise to a finding of lack of competence.   Indeed, in *Ober* the respondent lost his client's file sometime after leaving his private practice in July 1994.   After several requests from his former client and her new attorney, respondent finally reconstructed the file and handed it to his former client on November 18, 1996.   *See id.*, 350 Md. at 623–24, 714 A.2d at 860.   The implication is that inherent in the notion of competence is the ability to timely address and remedy prior mistakes.

"In the instant matter, Respondent, a specialist in real estate matters, clearly lost Mrs. Glenn's deed. Furthermore, complete delegation of an administrative matter to his secretary is no excuse for such loss. The nature of the item lost, however, and the impossibility of reconstructing the document distinguishes the instant matter from the circumstances in *Ober*. Accordingly, this Court finds that the loss of Mrs. Glenn's deed, while irresponsible in itself, does not rise to the level of incompetence contemplated by the Rules of Professional Conduct.

"II.   Rule 1.3—Diligence

Rule 1.3   of the Maryland Rules of Professional Conduct provides the following:

A lawyer shall act with reasonable diligence and promptness in representing a client.

"Respondent was retained to complete a relatively simple legal task. He was asked to merely prepare a deed by changing an existing owner's name and adding another name as co-owner. Respondent represented that he would complete the task in three weeks. Respondent never completed the task. In fact, Respondent admitted that he would not have known that the task was incomplete had the Glenns not brought the matter to his attention. As such, Respondent clearly has an obligation to maintain a tickler system for *all* open files including those relatively minor matters, such as preparing a deed, which are the most likely to be forgotten or misplaced. This is especially true for a real estate practice where the volume of paper is substantial.

"Furthermore, Respondent was retained in late April 1998 and had approximately six months up until the time of his suspension in November 1998 to complete this simple legal task. Thus, the fact that Respondent was suspended from the practice of law is of no significance as to his ability to complete and execute the deed. In light of the aforementioned facts, this Court finds that Respondent violated Rule 1.3 in his representation of Mr. and Mrs. Glenn.

"III.   Rule 1.4—Communication

Rule 1.4   of the Maryland Rules of Professional Conduct provides the following:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

"From the findings of fact listed above, this Court finds that Respondent did not demonstrate the communication required of attorneys in two respects.   First, Respondent completely failed to contact and otherwise respond to Mrs. Glenn's repeated inquiries as to the status of the deed. Mrs. Glenn handed over the deed in April 1998 upon Respondent's representation that the deed would be completed in three weeks.   Having not heard from Respondent, Mrs. Glenn telephoned in July 1998 inquiring about the status of her deed. She was unable to speak to Respondent and was told by someone in Respondent's office that she owed more money.   Mrs. Glenn asked that Respondent call her to discuss the additional money and to otherwise discuss the status of the deed.   Mrs. Glenn did not receive a return call.   Moreover, Mrs. Glenn did not receive a return call from the numerous calls placed between July and December 1998.   Respondent's complete disregard of his client's inquiries constitutes a violation of Rule 1.4(a).

"Second, Respondent never disclosed his suspension from the practice of law in November 1998.   More specifically, Mr. and Mrs. Glenn visited Respondent's office in December 1998 after many unsuccessful attempts to contact him by telephone.   During that visit, Respondent never disclosed that he had been suspended for 18 months.   This was a vital piece of information because no deed can be recorded unless an attorney certifies it.   *See* Md.Code Ann., Real Property § 3–104(f)(1).   Had Respondent disclosed his suspension, Mr. and Mrs. Glenn could have made the informed choice to

seek another attorney. Thus, Respondent's failure to disclose his suspension constitutes a violation of rule 1.4(b)."

## II.

Respondent excepts to the hearing judge's conclusion that Respondent's failure to disclose his suspension from the practice of law constitutes a violation of Rule 1.4. He argues that he did not know whether the deed had been prepared in February 1999; he could not locate the file and, thus, could not advise the Glenns of the status of their deed and whether they should retain another attorney. Had Respondent found the file, the Glenns had the option, under Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.) Real Property Article, § 3-104(f)(1), of preparing their own deed and certifying themselves that the deed was prepared by one of the parties named in the instrument. He concludes that, under these circumstances, the deed could have been recorded without an attorney certification.

We overrule Respondent's exception. Rule 1.4(b) requires an attorney to explain matters to a client to permit the client to make reasonably informed decisions regarding the representation. Without the knowledge that Respondent had been suspended from the practice of law, the clients were unable to make informed decisions about the objectives and means of the representation.

## III.

We turn now to the appropriate sanction. We reiterate the purpose of sanctions—to protect the public, to protect the integrity of the legal profession, and to deter other lawyers from engaging in violations of the Rules of Professional Conduct. *See Attorney Grievance v. Fezell,* 361 Md. 234, 254, 760 A.2d 1108, 1119 (2000); *Attorney Griev. Comm. v. Milliken,* 348 Md. 486, 516, 704 A.2d 1225, 1240 (1998); *Attorney Griev. Comm. v. Glenn,* 341 Md. 448, 483, 671 A.2d 463, 480 (1996). The purpose is not to punish the errant attorney. *See Fezell,* 361 Md. at 254, 760 A.2d at 1119.

Bar Counsel recommends that Respondent be indefinitely suspended from the practice of law. Bar Counsel recites Respondent's disciplinary history as justification for the sanction. Respondent suggests that a reprimand would be in order.

On October 29, 1996, Respondent was issued a private reprimand for violation of Rules 1.3 and 8.1 of the Maryland Rules of Professional Conduct. He failed to act with reasonable diligence and promptness in representing a client, he failed to obtain the requisite signatures on a deed, and he failed to promptly record deeds. He also failed to respond to Bar Counsel in a timely manner in connection with Bar Counsel's investigation.

On that same day, another private reprimand was issued to Respondent for violation of Rules 1.15(b) and 8.1(b) of the Maryland Rules of Professional Conduct. He failed to abide by the terms of an escrow agreement, he did not promptly deliver funds to a third person entitled to them, and he failed to respond to Bar Counsel's complaint in a timely manner.

In June 1989, Respondent was issued a private reprimand in connection with four matters. He was found to have violated DR6–101(a)(3) of the Maryland Code of Professional Responsibility and Rule 1.3 of the Maryland Rules of Professional Conduct.

On November 4, 1998, Respondent was suspended from the practice of law, by consent, for a period of eighteen months. His suspension was based upon four real estate settlements in which he did not obtain proper payoff amounts and did not release liens of record of which he had knowledge. He made disbursements contrary to that shown on settlement sheets in derogation of the interest of a secured party. In addition, he failed to adequately respond to Bar Counsel's request for information concerning those matters. It is the November 1998 suspension that he did not reveal to the Glenns.

The severity of the sanction to be imposed in any particular case depends upon the individual facts and circumstances, taking into account any aggravating or mitigating

factors. *See Fezell,* 361 Md. at 254, 760 A.2d at 1119; *Glenn,* 341 Md. at 484, 671 A.2d at 480.

■ Respondent has violated Rules 1.3 and 1.4. Respondent's failure to perform with respect to the Glenns' deed is a clear violation of Rule 1.3. As we noted in *Attorney Griev. Comm'n v. Montgomery,* 296 Md. 113, 120, 460 A.2d 597, 600 (1983), "lack of communication with one's client, for whatever reason, is a matter of continuing concern to the public," warranting disciplinary sanction. *See Attorney Griev. Comm'n v. Finnesey,* 283 Md. 541, 547, 391 A.2d 434, 436–37 (1978); *Attorney Grievance Comm'n v. Pollack,* 279 Md. 225, 237, 369 A.2d 61, 68 (1977).

Respondent suggests a reprimand as a reasonable sanction. Underlying the violation was a misplaced file. There was no deceit, misrepresentation or misappropriation by Respondent, and there is no evidence that the clients were actually harmed. As mitigation, Respondent maintains that he relied upon his secretary to process the deed, and unbeknownst to him, it was not processed. After he was suspended, he did not act as an attorney, and, in response to the Glenns, he looked for their deed, which he did without success, and he fully refunded the fee to them.

■ On the other hand, when we consider Respondent's conduct in light of his prior disciplinary history, it is clear that, to protect the public, an increase in the degree of discipline beyond that of a reprimand is necessary. The conduct underlying the instant infractions is the same conduct for which Respondent had been disciplined in the past. In *Attorney Griev. Comm'n v. Manning,* 318 Md. 697, 704–05, 569 A.2d 1250, 1254 (1990), we noted:

In recent years, however, we have noticed too many instances when lawyers have agreed to represent clients and accepted fees, in part or in whole, only to completely neglect these same legal problems, causing the same clients emotional distress, financial loss, or other varying kinds of inconvenience. More often than not, these situations have been exacerbated by the lack of respect and attention

extended to the courts as evidenced by the failure to file timely pleadings or to make appearances as scheduled before the court to enable proceedings to be conducted. It seems to us that this kind of persistent conduct is evidence of a lawyer's disregard of his obligation.

In fulfilling our responsibility to protect the public, we believe we would be remiss in imposing a reprimand and conclude that the appropriate sanction is an indefinite suspension, effective thirty days from the filing of this opinion.

Should Respondent be reinstated at any time in the future, such reinstatement shall be conditioned upon Respondent satisfying the following conditions:

1. Respondent shall have paid all costs assessed pursuant to the mandate in this matter; and

2. Respondent shall have registered, and prepaid the tuition, at an accredited institution of higher learning or the Maryland Institute for the Continuing Professional Education of Lawyers for a course on Professional Responsibility, and Respondent shall have represented and warranted to Bar Counsel, and, thereby, to this Court, that he will diligently pursue and successfully complete that course; and

3. Respondent shall have engaged, at his expense, a monitor, acceptable to Bar Counsel, who will oversee Respondent's practice of law for a period of two years and provide reports to Bar Counsel on a quarterly basis concerning Respondent's practice. The monitor shall have access, by client agreement, to all files of Respondent. The monitor's consent and an indication of his or her willingness to so act must be appended to any Petition for Reinstatement.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST JOHN WALSH CASSIDY.*