823 A.2d 611

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Thomas Leo GRANGER, III.

Misc. AG No. 31, Sept. Term, 2002.

Court of Appeals of Maryland.

May 8, 2003.

440

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Deputy Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Charles Mentzer, Esquire of Baltimore, for respondent.

Argued before BELL, C.J. ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

On or about April 22, 2002, the Attorney Grievance Commission of Maryland, petitioner, by Melvin Hirshman, Bar Counsel, and Glenn M. Grossman, Deputy Bar Counsel, filed, pursuant to Maryland Rule 16–751,[1] a petition for disciplinary action against Thomas Leo Granger, III, respondent, for multiple violations of the Maryland Rules of Professional Conduct (MRPC). The petition alleged that respondent, based upon his representation of Phyllis Klingenberg, the complainant, had violated MRPC 1.1, 1.2(a), 1.3, 1.4, 8.1(a) and 8.4(c) and (d).[2]

---

1. Maryland Rule 16–751, in relevant part, states:

    **"Rule 16–751. Petition for disciplinary or remedial action.**

    (a) **Commencement of disciplinary or remedial action.** Upon approval of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. The relevant provisions of these MRPC state:

    **"Rule 1.1. Competence.**

    A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
    **"Rule 1.2. Scope of representation.**

On April 17, 2002, pursuant to Maryland Rule 16–752,[3] this Court transmitted the matter to Judge Pamela North of the Circuit Court for Anne Arundel County, the hearing judge, to conduct a hearing and to make findings of fact and conclusions of law.

On November 20, 2002, an evidentiary hearing was held before the hearing judge. On January 8, 2003, Judge North issued her Findings of Fact and Conclusions of Law and found

---

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive a jury trial and whether the client will testify. . . .

"**Rule 1.3. Diligence.**

A lawyer shall act with reasonable diligence and promptness in representing a client.

"**Rule 1.4. Communication.**

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

"**Rule 8.1. Bar admission and disciplinary matters.**

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; . . . .

"**Rule 8.4. Misconduct.**

It is professional misconduct for a lawyer to:

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice; . . . ."

3. Maryland Rule 16–752, in relevant part, states:

"**Rule 16–752. Order designating Judge.**

(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

by clear and convincing evidence that respondent violated MRPC 1.1, 1.2(a), 1.3, 1.4, 8.1 and 8.4(c) and (d). The record was transferred from the hearing judge to our Court for oral argument. Pursuant to Maryland Rule 16–758(b),[4] both parties filed with this Court exceptions to the Judge North's Findings of Fact and Conclusions of Law.

## I. Facts

Respondent was admitted as a member of the Bar of this Court on June 23, 1998, and maintains an office for the practice of law in Glen Burnie, Maryland. The Petition for Disciplinary Action in this case was based upon the complaint of Phyllis J. Klingenberg, BC Docket No. 2002–104–2–2.

Judge North's Findings of Fact and Conclusions of Law are, in part, as follows:

## "FINDINGS OF FACT AND CONCLUSIONS OF LAW

"This Court having considered all testimony admitted, all documentary evidence admitted, and arguments of counsel, makes the following written statement of findings of fact and conclusions of law.

### *FACTS*

"Phyllis Klingenberg (Klingenberg) was in danger of losing her home by foreclosure because she was five months delinquent on her mortgage as of August 2001. Klingenberg, a cashier at Giant Food for thirteen years, received in the mail a letter from Thomas Granger (Respondent) dated August 6, 2001, informing her of certain rights and obligations concerning the impending foreclosure, and of the

---

4. Maryland Rule 16–758(b) states:
   "**Rule 16–758. Post hearing proceedings.**
      (b) **Exceptions; recommendations.** Within 15 days after service if the notice required by section (a) of this Rule, each party may file (1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition under Rule 16–759(c)."

availability of Respondent to provide legal services to 'stop the sale, and put a "fence" around [her] home.' After receiving the letter, Klingenberg called Respondent on August 11, 2001, to make an appointment to discuss saving her home. She spoke directly to Respondent, who told her the costs for filing a petition for bankruptcy, the documents that were needed, and the cost for his representation. Klingenberg told Respondent she did not have much money. She asked about a payment plan and if he would accept $200 to get started on her case. Respondent agreed.

"On August 12, 2001 at 3:00 p.m. Klingenberg and her adult son came from Belair, Maryland to Respondent's office in Glen Burnie for their initial appointment. They stayed until about 7:00 p.m. According to [complainant] and her son, no one else was at Respondent's office until fifteen minutes before their departure when Respondent's administrative assistant, Martha Tsitsiwu (Martha), arrived. According to Martha, she received a phone call from Respondent at 1:00 p.m. on August 12, 2001 asking her to come in. She arrived at 1:45 p.m. She testified she was in the office prior to the arrival of the Klingenbergs and did not leave until after their departure. On this point, the Court finds the Klingenbergs to be the more credible historians because their visit was not only of dire importance to Klingenberg, but it was a completely unique experience for her and her son. In contrast, Martha testified she assisted Respondent part-time for about two and one-half years. There is no reason to believe Martha was lying, but there is reason to believe she was mistaken because she testified her only interaction with the Klingenbergs was to copy a receipt for the $200 payment, and she was doing other tasks while Respondent was interviewing Klingenberg. The Klingenbergs testified Martha also provided them with a map to the Trustee's office.

"When Klingenberg came to Respondent's office on August 12, she brought with her all the documents Respondent requested by telephone the previous day, along with her $200 payment. The foreclosure on her home was scheduled

for August 28, 2001, a fact which Respondent acknowledges was communicated to him.

"According to Klingenberg, Respondent had asked her to bring pay stubs, two years of income taxes, deeds, the settlement sheet on her home, any charge card bills, and all other bills. · She brought these documents with her, and Respondent told her that she had brought all necessary papers for him to file the petition and that she was very organized.[5] Klingenberg's son, who was a sequestered witness, confirmed Respondent made these comments to Klingenberg. Respondent told her there was no need for her to return. She stated she signed a blank petition while in his office.

"Respondent testified that Klingenberg did not bring all the necessary documents and was told she had to come back with additional documents and more money before he could file the petition. He testified at the trial of this matter that he did not want to be pushy about money. However, in Respondent's answer to interrogatory number 10 he stated '[p]rior to filing of the Chapter 13 Petition, Ms. Klingenberg was told to bring the *balance* of the fee,[6] proof of additional income, and other documentation needed to complete the petition.' (emphasis added) In Respondent's answer to interrogatory number 11, he further stated, 'Ms. Klingenberg was told, in the presence of her son and Martha, that Respondent would require additional money to complete the petition. Additionally, Ms Klingenberg was informed that a two hour signing and review meeting would be needed prior to filing.'

"Although Respondent knew Klingenberg's home would go to foreclosure on August 28, 2001, he never called

---

**5.** Footnote one in Judge North's findings stated, "Carol Vitek, a paralegal for twelve years, who has assisted Respondent with thirty to forty bankruptcy cases, testified she has never seen a client come in with all the required paperwork."

**6.** Footnote two in Judge North's findings stated, "At trial Respondent testified that he did not mean to use the word 'balance' in his answer to interrogatory number 10."

Klingenberg or sent her any letters reminding her of the urgency for her to return with documents and money. Respondent testified at trial that he does not recall the dates Klingenberg was told to come back. Martha testified that an appointment was scheduled for Klingenberg to return with more bills and statements. However, in response to the Court's question, she stated that no appointment date was set and that Klingenberg was simply told to get in touch with Respondent in the next week with the documents necessary for Respondent to start the case. The Court finds as a fact that Klingenberg was never told to come back with more documents and money before Respondent would file the petition.[7] The Court further finds that Respondent led Klingenberg to believe that nothing more was required of her prior to his filing of the petition, and she was not told she would see Respondent prior to attending a meeting in Baltimore at the Trustee's office; a meeting at a location for which she was given a map with directions.

"It is not in dispute that Respondent told Klingenberg on the phone on more than one occasion that the petition had been filed and that her home was safe. Even when Klingenberg told Respondent in a telephone conversation that a woman came to her home seeking to buy it, that she had seen her house listed in the newspaper, and after Klingenberg told Respondent she received a card from the person who purchased her home on August 28, 2001, Respondent continued to tell Klingenberg that was impossible and her home was safe. There is no evidence that Respondent, when advised of these facts, ever checked on the status of her case or confirmed that he had, in fact, filed her petition. Respondent never filed Klingenberg's bankruptcy petition and her house was sold. At trial Respondent testified that

---

**7.** Footnote three in Judge North's findings stated, "See ... the retainer agreement. This contract allows for Klingenberg to pay the fee by September 12, 2001 (not August 28, 2001) and receive a $350 discount. Also, at trial, Respondent testified he never told Klingenberg if she did not pay additional money he would not file the petition."

he believes he confused Klingenberg's case with that of the Kalinowski's, which he had filed the previous Friday. However, Respondent never printed Klingenberg's petition from the computer until after her house was sold. Klingenberg was the only client with whom respondent met on Sunday, August 12, 2001.

"Respondent testified that after the sale of Klingenberg's home he asked her if she would allow him to try to set aside the sale of her home at no charge to her. He described the various attacks he could make on the notice, auction, or sale of her home, but she refused to allow him to take any further action on her behalf. She came to his office and collected all her papers. Respondent refunded her $200.

"When Respondent was asked on cross-examination to explain what happened in regard to the failure to file the petition, Respondent stated essentially that he just forgot about this case at some point because his office was busy and the client did not come back. Respondent further stated that had Klingenberg returned, his office would have prepared for the appointment. He left her file on a table, and he only worked on active cases. He testified her case sort of fell through the cracks.

". . . [Respondent's] concentration is in debtor law, which includes the filing of bankruptcy petitions. Ninety percent of his practice is debtor law.

"In response to inquiry from bar counsel Respondent wrote a letter to Mr. Grossman dated October 14, 2001.

## CONCLUSIONS OF LAW

"The Petitioner urges the Court to find that Respondent has violated Rules 1.1, 1.2, 1.3, 1.4, 8.1 and 8.4 of the rules of Professional Conduct. . . .

"The Court finds by clear and convincing evidence that Respondent violated Rule 1.1 because he did not provide competent representation to Klingenberg. Since Respondent testified he specializes in debtor law, the Court can reasonably conclude that Respondent possesses the legal

knowledge and skill to handle Klingenberg's case. Respondent also testified to the procedure he would use to file the petition, to time lines, to meeting at the trustee's office, to the information and documents he would require. Unfortunately, based on the evidence it does not appear that he exercised the thoroughness and preparation reasonably necessary to represent Klingenberg in that following the meeting of August 12, 2001 he took no further action to protect her home from foreclosure.

"It also appears by clear and convincing evidence that Respondent violated Rule 1.2(a) because he did not abide by his client's decision to immediately file the petition for bankruptcy given the deadline of August 28, 2001. Klingenberg made it clear that her purpose in hiring Respondent was to save her home from foreclosure. Respondent assured her on numerous occasions he would protect her home and 'put a fence around it.' He did not take the necessary steps to abide by her decision to file for bankruptcy, therefore, he violated his duty in regard to scope of representation.

"Rule 1.3 has also been violated because Respondent did not act with reasonable diligence or promptness. In agreeing to represent Klingenberg, Respondent fully understood that acting promptly was of the utmost importance, yet he did not act promptly or act at all. Due diligence required Respondent, when faced with Klingenberg's questions about seeing her home listed for sale in the paper, having a potential buyer come to her home, and being advised that someone had purchased her home, to immediately check on her case by confirming receipt by the bankruptcy court of her petition. He never made any inquiries to ensure her petition had been properly filed.

"The Court further concludes that Respondent did not keep Klingenberg reasonably informed of the status of her case or respond honestly or, at a minimum, without negligence to her request for information about the security of her ownership in her home, all in violation of Rule 1.4(a). Respondent repeatedly told Klingenberg her home was safe

and not to worry, and that the petition had been filed when, in fact, none of that was true.

"In regard to Rule 1.4(b) Respondent did not, by his own admissions to bar counsel, make clear to Klingenberg how much money would be due and when, what, if any, additional documents were required, and most importantly whether there were any financial, legal, or procedural impediments to the filing of her petition. If additional documents were needed, and had that fact been made clear to Klingenberg the Court concludes that she most assuredly would have complied given her anxiety over losing her home. Respondent, therefore, violated the requirements of Rule 1.4(b).

"The Court regrettably finds that Respondent has also violated Rule 8.1 because he knowingly made a false statement of material fact. Respondent testified that he sent Klingenberg a letter urging her to come in with the documents because time was running out. Had Respondent sent such a letter to Klingenberg, surely he or Klingenberg would have a copy of it. Klingenberg and Respondent both testified that there was not communication flowing between them August 12, 2001 through August 28, 2001. Both cannot be true. Since no such document was admitted into evidence, the Court finds no letter was sent.

"The Court does not find credible Respondent's statement that the 'Klingenbergs said they would think about it. They never responded after that.' Klingenberg's phone records, which were admitted into evidence, show phone calls from her to Respondent's office on August 13, August 15, August 22, August 28, 2001 and thereafter.

"Also, Respondent's statement to bar counsel in his October 14, 2001, letter '[s]ince she had only paid a small payment, this case was handled differently, it was not labeled as a deadline file, and it was not placed in the new files to be worked,' flies in the face of his trial testimony where he stated he thought he had filed the petition, but confused her case with the Kalinowski case. It further conflicts with his trial testimony wherein he stated that he intended to file her petition and she could pay by September

12, 2001 with a discount or pay thereafter, without a discount. Respondent has violated Rule 8.1.

"For the reasons stated above, Respondent has violated Rule 8.4(c) by misrepresenting material facts to both bar counsel and to Klingenberg regarding the filing of her petition. Moreover, this failure to truthfully report the facts regarding his representation of Klingenberg to bar counsel was conduct prejudicial to the administration of justice [which comprises a violation of Rule 8.4(d) ]. It is bar counsel's responsibility to investigate allegations made by a client against a lawyer; and being provided with truthful and accurate information is critical to such an investigation. Accurate information is essential to bar counsel's decision to take any action justice may require.

"All of the above conclusions of law are based on clear and convincing evidence." [Citations omitted.][Some footnotes omitted.][Some alterations added.]

## II. Standard of Review

In *Attorney Grievance Commission v. Harris,* 371 Md. 510, 539–40, 810 A.2d 457, 474–75 (2002), we recently stated:

"It is well established that '[t]his Court has original jurisdiction over attorney disciplinary proceedings.' *Attorney Grievance Comm'n v. Dunietz,* 368 Md. 419, 427, 795 A.2d 706, 710–11 (2002) (citing *Attorney Grievance Comm'n v. Snyder,* 368 Md. 242, 253, 793 A.2d 515, 521 (2002)); *Attorney Grievance Comm'n v. Harris,* 366 Md. 376, 388, 784 A.2d 516, 523 (2001); *Attorney Grievance Comm'n v. Gavin,* 350 Md. 176, 189, 711 A.2d 193, 200 (1998); *Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 287, 614 A.2d 102, 108 (1992). *See also* Md. Rule 16–709(b) (stating that '[c]harges against an attorney shall be filed on behalf of the [Attorney Grievance] Commission in the Court of Appeals'). Furthermore, '[a]s the Court of

original and complete jurisdiction for attorney disciplinary proceedings in Maryland, we conduct an independent review of the record.' *Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 763 (2002) (quoting *Snyder,* 368 Md. at 253, 793 A.2d at 521 (citing *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997))).

"In our review of the record, '[t]he hearing judge's findings of fact will be accepted unless we determine that they are clearly erroneous.' *Garfield,* 369 Md. at 97, 797 A.2d at 763 (quoting *Snyder,* 368 Md. at 253, 793 A.2d at 521 (citations omitted)). *See also Dunietz,* 368 Md. at 427–28, 795 A.2d at 711 ('The hearing judge's findings of fact "are *prima facie* correct and will not be disturbed unless clearly erroneous." ') (quoting *Attorney Grievance Comm'n v. Zdravkovich,* 362 Md. 1, 21, 762 A.2d 950, 960–61 (2000)); *Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 388, 794 A.2d 92, 100 (2002) ('Factual findings of the hearing judge will not be disturbed if they are based on clear and convincing evidence.'). We recently reiterated the definition of clear and convincing evidence in *Harris,* 366 Md. at 389, 784 A.2d at 523 (quoting *Attorney Grievance Comm'n v. Mooney,* 359 Md. 56, 79, 753 A.2d 17, 29 (2000)), when we said:

' "The requirement of 'clear and convincing' or 'satisfactory' evidence does not call for 'unanswerable' or 'conclusive' evidence. The quality of proof, to be clear and convincing, has also been said to be somewhere between the rule in ordinary civil cases and the requirement of criminal procedure-that is, it *must be more than a mere preponderance but not beyond a reasonable doubt.* It has also been said that the term 'clear and convincing' evidence means that the witnesses to a fact must be found to be credible, and that the facts to which they have testified are distinctly remembered and the details hereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Whether evidence is clear and con-

vincing requires weighing, comparing, testing, and judging its worth when considered in connection with all the facts and circumstances in evidence." [Emphasis added.]

359 Md. at 79, 753 A.2d at 29 (quoting *Berkey v. Delia*, 287 Md. 302, 320, 413 A.2d 170, 178 (1980) (citing *Whittington v. State*, 8 Md.App. 676, 679 n. 3, 262 A.2d 75, 77 n. 3 (1970))).' We recently explained in *Dunietz* that '[a]s to the hearing judge's conclusions of law, "our consideration is essentially *de novo*." ' *Dunietz*, 368 Md. at 428, 795 A.2d at 711 (quoting *Attorney Grievance Comm'n v. Thompson*, 367 Md. 315, 322, 786 A.2d 763, 768 (2001) (quoting *Attorney Grievance Comm'n v. Briscoe*, 357 Md. 554, 562, 745 A.2d 1037, 1041 (2000)))."

■ Respondent has filed numerous exceptions to the hearing judge's findings of fact and conclusions of law. After a review of the record, we affirm all of the hearing judge's findings of fact and all but one of her conclusions of law and hold that they are not clearly erroneous and are based on clear and convincing evidence. *See Garfield*, 369 Md. at 97, 797 A.2d at 763–64; *Dunietz*, 368 Md. at 427–28, 795 A.2d at 711; *Monfried*, 368 Md. at 388, 794 A.2d at 100. We hold that respondent has failed to establish facts by a preponderance of evidence sufficient to overcome all but one of Judge North's findings and conclusions. Therefore, we overrule all but one of respondent's exceptions. Petitioner has filed one general exception in this Court to the hearing judge's findings of fact and conclusions of law. We sustain petitioner's exception in the case *sub judice*.

### III. Discussion—The Exceptions

Respondent has filed nineteen exceptions to the hearing judge's findings of fact and conclusions of law. Respondent's first ten exceptions, however, for all intents and purposes, can be merged into a general exception objecting to different factual findings made by the hearing judge in light of the testimony she heard and the facts presented to her at respondent's hearing. In his first ten exceptions, excluding his exception number five, respondent has done nothing more than reiterate excerpts of the testimony given at the hearing

and/or rewrite excerpts of the hearing judges findings. To support these exceptions respondent proffers little, or most often, no arguments or reasons to substantiate his exceptions; rather he merely emphasizes the contrary testimony that was given or the contrary facts that were presented to the hearing judge.

As indicated *supra,* we accept the hearing judge's findings of facts as they are not clearly erroneous and, as such, we shall not disturb her factual findings. Most important, we "keep in mind that it is elementary that the hearing judge 'may elect to pick and choose which evidence to rely upon.' " *Attorney Grievance Commission of Maryland v. Sheridan,* 357 Md. 1, 17–18, 741 A.2d 1143, 1152 (1999) (quoting *Attorney Grievance Comm'n v. Kemp,* 303 Md. 664, 675, 496 A.2d 672, 677 (1985)). Such deference is given because the hearing judge is in the best position to assess first hand a witness' credibility.

Ultimately, Judge North found, after a full hearing at which the witnesses on whose testimony respondent relies, including his own testimony, were heard and observed, that the testimony of the complainant, Klingenberg, and her son, was more credible than the testimony proffered by respondent, his secretary and his paralegal assistant. The testimony and facts before the hearing judge constituted clear and convincing evidence for Judge North to find as she did. As a result, we overrule these factual exceptions.

■ We quickly dispense with respondent's fifth exception to the finding that "Klingenberg's son, who was a sequestered witness, confirmed Respondent made these comments [about needed documents]." (alteration added). Respondent argues that the hearing judge attempted to "lend more credibility" to the testimony of Klingenberg's son by noting that he "was a sequestered witness." All of the witnesses were sequestered. This argument is without merit. It is clear that the hearing judge was merely stating fact. We see no reason to further comment on this exception and thus, overrule it.

In the following paragraphs we shall next discuss respondent's exceptions tailored to the hearing judge's conclusions of law; they are respondent's exceptions eleven through nineteen.

■ Respondent's eleventh exception is to the conclusion that "Since Respondent testified he specializes in debtor law, the Court can reasonably conclude that Respondent possesses the legal knowledge and skill to handle Klingenberg's case." Respondent accurately argues that he "did not testify that he *specialized* in debtor law." During the hearing, Bar Counsel asked respondent "Does your practice concentrate in any particular area?" Respondent replied "I practice debtor law," illustrating that he never used the word specialize and that his response cannot be used in that manner because the term concentrate and specialize have different meanings. Regardless of the hearing judge's inaccurate account of respondent's testimony on this point, the semantics of the language used does not warrant the Court to overturn the hearing judge's conclusion that respondent did not provide competent representation to Ms. Klingenberg. There was a clear perception, due to the testimony about his legal practice, that respondent possessed the requisite legal knowledge and skill to handle Ms. Klingenberg's case because he, admittedly, practiced debtor law. We note that respondent was the one who initially contacted Ms. Klingenberg by unsolicited letter stating that he might be able to provide her legal services particular to her bankruptcy matter. Additionally, the record reflects that respondent has handled numerous bankruptcy cases, supporting the hearing judge's general conclusion that he possessed the general knowledge and skill necessary to represent Ms. Klingenberg and that he was, due to his type of practice, whether he "specialized in" or "concentrated in" or "practiced" debtor law, aware of the thoroughness and preparation that would be necessary to undertake and carry out such a case. We overrule this exception.

■ Respondent's twelfth exception is to the hearing judge's conclusion that respondent violated Rule 1.2(a), per-

taining to scope of representation, because "he did not abide by his client's decision to immediately file the petition for bankruptcy given the deadline of August 28, 2001." Respondent claims this conclusion should be overturned for various reasons, *i.e.*, because he did not ever possess the required documents he would need to file the petition, he would have needed Ms. Klingenberg to return to the office to sign the petition, he would have needed more of his fee to file the petition, etc. For the reasons stated *supra*, wherein we accepted all of the hearing judge's findings on these factual issues, we overrule this exception. Additionally, the fact remains that having the information and interaction that he did have with Ms. Klingenberg, respondent did nothing regarding her case. Respondent undertook no action to further her case or even "get the ball rolling" on her bankruptcy petition knowing, himself, that the foreclosure was two weeks away. Ms. Klingenberg wanted to prevent the foreclosure on her home; to do so, respondent would have needed to file the petition immediately given the two week time frame, therefore, by doing nothing he violated Rule 1.2(a).

Respondent's thirteenth exception relates to the previous exception and, specifically, to the hearing judge's conclusion that "[Respondent] did not take the necessary steps to abide by her decision to file for bankruptcy, therefore, he violated his duty in regard to scope of representation." Essentially, respondent proffers that he did all he could reasonably do in preparing for filing her bankruptcy case given what he had and that it was Ms. Klingenberg's failure to follow up with him that ultimately resulted in her petition not being filed. For the reasons just indicated, we overrule this exception; respondent failed in his scope of representation to Ms. Klingenberg because "all that he could reasonably do" in reality, for Ms. Klingenberg amounted to complete inaction regarding her legal matter and her objective of filing for bankruptcy.

Respondent's fourteenth exception is to the conclusion that "he never made any inquiries to ensure her petition had been properly filed." Respondent supports this exception by

noting that he did, in fact, follow up on her case and that he even contacted the owner of the house on several occasions, but that Ms. Klingenberg would not grant him permission to take any action to attempt to void the foreclosure sale. This exception is without merit. Respondent's attempts to remedy Ms. Klingenberg's situation "after-the-fact" do not trump his blatant lack of diligence or promptness in attending to her legal problem up until that time, which led to the hearing judge's conclusion that he violated Rule 1.3 pertaining to attorney diligence. We overrule this exception.

Respondent's fifteenth exception relates to his violation of Rule 1.4(b), requiring that an attorney "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." He excepts to the hearing judge's conclusion that he violated this rule by not making it clear to Ms. Klingenberg how much the fees would be, when they would be due, if any other documents were needed and, most importantly, whether there were any other financial, legal or procedural impediments to the filing of her petition. The hearing judge went on to conclude that had Ms. Klingenberg known other documents were needed she would have provided them to respondent due to her "anxiety over losing her home." To support this exception, respondent once again relies upon the fact that he and Martha testified that respondent made the status of the situation clear by telling Ms. Klingenberg that her signature, other monies and other visits would be necessary before he could proceed with her case. As indicated *supra*, the hearing judge found the opposite to be true and the findings of the hearing judge, especially those findings relating to Ms. Klingenberg's understanding of her legal problem in light of her interview and subsequent contact with respondent, support this rule violation. Respondent did little to clearly explain her legal problem to her and certainly not to the extent to permit her to make informed decisions regarding his representation of her. We, therefore, overrule this exception.

Respondent's remaining exceptions, sixteen through nineteen, relate to the same attorney misconduct upon which petitioner bases its sole exception which we discuss *infra*-respondent's false and misleading statements to Bar Counsel and the hearing judge about what he stated to Ms. Klingenberg in her representation and what she allegedly said to him during that time. We will sustain petitioner's sole exception and, in so doing, we overrule all but one of respondent's remaining exceptions and hold that he has proffered insufficient evidence to sustain these remaining exceptions and that the exceptions do not warrant this Court's rejection of the hearing judge's conclusions regarding respondent's violations of Rules 8.1, 8.4(c) and (d). Because we sustain petitioner's sole exception and affirm the ultimate conclusion that respondent violated Rules 8.1, 8.4(c) and (d) in representing Ms. Klingenberg, we need not address specifically the merits of each of these exceptions, except for his sixteenth exception.

■ We sustain respondent's sixteenth exception to the hearing judge's conclusion that:

"Respondent has also violated Rule 8.1 because he knowingly made a false statement of material fact. *Respondent testified that he had sent Klingenberg a letter urging her to come in with the documents because time was running out.* Had Respondent sent such a letter to Klingenberg, surely he or Klingenberg would have a copy of it. Klingenberg and Respondent both testified that there was no communication flowing between them [from] August 12, 2001 through August 28, 2001. Both cannot be true. Since no such document was admitted into evidence, *the Court finds no letter was sent.*" [Alteration added.] [Emphasis added.]

Respondent argues that the hearing judge took his testimony out of context and that he never stated to bar counsel or the hearing judge that he sent a letter to Ms. Klingenberg urging her to come in with documents because time was running out in the time period between August 12th and August 28th. Based upon our independent review of the record, the record reflects that the only letter respondent testified that he sent,

excluding his initial solicitation letter, was his September 16, 2001 letter. This letter included a refund of the $200 in fees Ms. Klingenberg had paid, explained how respondent might have been able to reverse the sale of her home, how she refused his help and how he would have attempted to rectify the sale of her home for her for free. Respondent did state in his letter to bar counsel that he "sent them [Klingenberg] a letter explaining that they were running out of time." Even though respondent's September 16th letter does not, as petitioner notes, indicate explicitly "that time is running out," we hold that the September 16th letter is the one to which respondent was referring and the letter the hearing judge inaccurately concluded was not sent. It was the only letter mentioned in his testimony (other that the original solicitation letter). The hearing judge took respondent's testimony out of context to imply that he testified that he had sent an additional letter to Ms. Klingenberg between August 12th and 28th Therefore, we sustain this exception regarding the hearing judge's conclusion that no letter was sent.

■ Petitioner's only exception in the case *sub judice* pertains to the hearing judge's conclusion that respondent violated Rules 8.1 and 8.4(c) and (d). Specific to these conclusions, petitioner excepts only to the hearing judge's failure to "explicitly find that the Respondent misrepresented to Bar Counsel that Ms. Klingenberg was to 'come back' to his office 'and sign the paper' and that she was to come back to his office prior to the filing of the bankruptcy petition to pay the Respondent a fee. Those statements, made in correspondence and to a Commission investigator were misleading and/or false and demonstrate violations of Rules 8.1, 8.4(c) and 8.4(d)." Based upon the factual findings of the hearing judge, *i.e.*, her findings accepting other testimony as the true facts, not the facts as stated by respondent or his witnesses, we sustain this exception and hold that respondent misrepresented the facts to Bar Counsel and to the hearing judge in his statements regarding that which he told Ms. Klingenberg she needed to do prior to filing her petition and regarding her representation generally. Respondent's misconduct in the case *sub judice*

warrants the conclusion that respondent violated Rule 8.1, 8.4(c) and 8.4(d).

## III. Sanction

■ We now consider the appropriate sanction for respondent's misconduct. In *Attorney Grievance Commission of Maryland v. Gallagher*, we set out the purposes of the sanctioning process when we stated:

" 'This Court is mindful that the purpose of the sanctions is to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession. *See Attorney Grievance Comm'n of Maryland v. Hess*, 352 Md. 438, 453, 722 A.2d 905, 913 (1999) (*quoting Attorney Grievance Comm'n of Maryland v. Webster*, 348 Md. 662, 678, 705 A.2d 1135, 1143 (1998)). We have stated that "[t]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n of Maryland v. Awuah*, 346 Md. 420, 435, 697 A.2d 446, 454 (1997). Therefore, the appropriate sanction depends upon the facts and circumstances of each particular case, including consideration of any mitigating factors. *See Attorney Grievance Comm'n of Maryland v. Atkinson*, 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000); *Attorney Grievance Comm'n of Maryland v. Gavin*, 350 Md. 176, 197–98, 711 A.2d 193, 204 (1998).' *Clark*, 363 Md. at 183–84, 767 A.2d at 873. In addition, we have stated that '[i]mposing a sanction protects the public interest "because it demonstrates to members of the legal profession the type of conduct which will not be tolerated." ' *Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 96, 753 A.2d 17, 38 (2000) (quoting *Attorney Grievance Comm'n v. Ober*, 350 Md. 616, 631–32, 714 A.2d 856, 864 (1998)) (citation omitted)."

*Gallagher*, 371 Md. 673, 713–14, 810 A.2d 996, 1020 (2002).

■■ "[T]he nature and gravity of the violations and the intent with which they were committed" is relevant to the

sanctioning process. *Attorney Grievance Commission of Maryland v. Awuah*, 346 Md. 420, 435, 697 A.2d 446, 454 (1997). *See Attorney Grievance Comm'n v. Pennington*, 355 Md. 61, 78, 733 A.2d 1029, 1037–38 (1999); *Attorney Grievance Comm'n v. Milliken*, 348 Md. 486, 519, 704 A.2d 1225, 1241 (1998); *Attorney Grievance Comm'n v. Montgomery*, 318 Md. 154, 165, 567 A.2d 112, 117 (1989). The attorney's prior grievance history, *i.e.*, whether the attorney has been previously charged with Rule violations and was subject to prior disciplinary proceedings, the nature of the misconduct involved in those proceedings and the nature of any sanctions imposed, as well as any facts in mitigation are similarly relevant, *Attorney Grievance Commission v. Franz*, 355 Md. 752, 762–63, 736 A.2d 339, 344 (1999); *Maryland State Bar Association v. Phoebus*, 276 Md. 353, 362, 347 A.2d 556, 561 (1975), as are the attorney's level of remorse for the misconduct, *Attorney Grievance Commission v. Wyatt*, 323 Md. 36, 38, 591 A.2d 467, 468 (1991), and the likelihood of the attorney repeating the conduct. *Attorney Grievance Comm'n v. Freedman*, 285 Md. 298, 300, 402 A.2d 75, 76 (1979). The likelihood of repetition of the misconduct is lessened where there is evidence that an attorney voluntarily terminates the misconduct and appreciates the seriousness of his actions. *Id.*

In the case *sub judice*, the Attorney Grievance Commission, through Bar Counsel, argues that respondent be indefinitely suspended from the practice of law with the right to reapply for reinstatement no sooner than one year. Respondent, however, advocates that he should receive a public reprimand. Given the nature and quantity of respondent's violations, his recommendation of a public reprimand is inherently inappropriate.

This Court has often issued sanctions of an indefinite suspension for various lengths for multiple violations of the MRPC not involving the intentional misappropriation of money. *See Attorney Grievance Comm'n v. Jeter*, 365 Md. 279, 778 A.2d 390 (2001)(indefinitely suspending an attorney with the right to reapply in six months where the hearing judge found that the attorney did not intentionally defraud his

clients, that he violated several rules and statutes and that he was remorseful for his misconduct); *Attorney Grievance Comm'n v. Cassidy,* 362 Md. 689, 766 A.2d 632 (2001)(indefinitely suspending an attorney where the attorney violated MRPC 1.3 and 1.4, he was previously sanctioned for nearly identical conduct); *Attorney Grievance Comm'n v. Cohen,* 361 Md. 161, 760 A.2d 706 (2000)(assessing an indefinite suspension with the right to reapply in six months to an attorney who violated MRPC 1.1, 1.3, 1.4, 8.1(a) and 8.4(c) and (d)); *Attorney Grievance Comm'n v. Brown,* 353 Md. 271, 725 A.2d 1069 (1999)(issuing an indefinite suspension with the right to reapply in one year).

In its recommendations for sanctions, petitioner relies, in part, on *Brown,* 353 Md. 271, 725 A.2d 1069, where this Court sanctioned Brown by imposing an indefinite suspension with the right to reapply in no less than one year. The attorney in *Brown* had violated several Rules of Professional Conduct during his representation of clients resulting in three separate complaints. While much of Brown's misconduct has similarities to the case at bar, including Brown's impeding of Bar Counsel's investigation, his multiple rule violations, his taking corrective measures and his genuine remorse for his conduct, it was more egregious than in this case in that Brown had previous violations and suspensions for similar conduct and was facing three complaints during his disciplinary proceeding. The current disciplinary proceedings are the first brought against respondent and his charges stem from his representations of one client, thus, is unlike the systematic violations evidenced in *Brown.* In addition, while the hearing judge properly found that respondent was not forthcoming, and essentially untruthful, to Bar Counsel during the investigation, respondent's conduct showed some remorse for his failure to adequately represent Ms. Klingenberg by his refunding of Ms. Klingenberg's $200 fee and his offering to attempt to rectify the situation by challenging the foreclosure of Ms. Klingenberg's home free of charge. Thus we hold that respondent's conduct does not warrant a one-year indefinite suspension in line with *Brown.*

Respondent's conduct is more in line with *Cohen, supra.* This Court accepted the hearing court's findings in *Cohen,* when the hearing court found, *inter alia,* that the attorney lacked thoroughness and preparation in violation of Rule 1.1, failed to keep his client informed of her case in violation of Rule 1.3, failed to inform his client of the status of her case in violation of Rule 1.4, made false representations to Bar Counsel in violation of Rule 8.1(a) and 8.4(c) and directly prejudiced the administration of justice by misleading Bar Counsel. While not identical, the nature and number of Cohen's violations closely parallel respondent's misconduct.

As we said in *Cassidy* :

" 'In recent years, however, we have noticed too many instances when lawyers have agreed to represent clients and accepted fees, in part or in whole, only to completely neglect these same legal problems, causing the same clients emotional distress, financial loss, or other varying kinds of inconvenience. More often than not, these situations have been exacerbated by the lack of respect and attention extended to the courts as evidenced by the failure to file timely pleadings or to make appearances as scheduled before the court to enable proceedings to be conducted. It seems to us that this kind of persistent conduct is evidence of a lawyer's disregard of his obligation.' "

*Cassidy,* 362 Md. at 700–01, 766 A.2d at 638 (quoting *Attorney Grievance Comm'n v. Manning,* 318 Md. 697, 704–05, 569 A.2d 1250, 1254 (1990)). While this language from *Cassidy* refers to a case where repeated violations existed, respondent's conduct showed similar disregard and neglect for Ms. Klingenberg, which brought her severe distress, loss and inconvenience as evidenced by the loss of her home. We therefore hold that an indefinite suspension with permission to reapply no sooner than six months is the appropriate sanction for respondent's conduct.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THIS COURT, INCLUDING THE COST OF ALL TRANSCRIPTS, FOR WHICH SUM**

**JUDGMENT IS ENTERED IN FAVOR OF THE ATTOR-NEY GRIEVANCE COMMISSION OF MARYLAND AGAINST THOMAS LEO GRANGER, III.**