28 A.3d 1196

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Roland N. PATTERSON, Jr.**

**Misc. Docket AG No. 22, Sept. Term, 2010.**

Court of Appeals of Maryland.

Sept. 21, 2011.

Reconsideration Denied Oct. 24, 2011.

**710**

712

Raymond A. Hein, Deputy Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Edward J. Smith, Jr., Baltimore, Maryland, for Respondent.

Submitted to BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

The Attorney Grievance Commission ("Petitioner"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Respondent, attorney Roland N. Patterson. The petition addresses Respondent's conduct in three matters: his management of an interest on lawyer trust account ("IOLTA" or "trust account"); an appeal in a landlord-tenant case in which he represented Denver Moten; and a tort claim in which he represented Rachelle Lewis and her son.

Pursuant to Md. Rule 16–752, we designated the Honorable Susan Souder of the Circuit Court for Baltimore County to hear the matter and make findings of fact and conclusions of

law in accordance with Md. Rule 16–757. Judge Souder conducted a hearing on January 19, 2011, and dictated her findings of fact and conclusions of law into the record. The transcribed findings and conclusions were adopted in an Order dated February 4, 2011. Judge Souder found by clear and convincing evidence that Respondent violated Maryland Lawyers' Rules of Professional Conduct ("MRPC") 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.5(a) and (b) (fees), 1.15(a) and (d) (safekeeping of client property), 1.16(d) (declining or terminating representation), 3.2 (expediting litigation), 8.1(b) (cooperation with bar counsel), and Md. Rules 16–606.1 and 16–609(c) governing attorney trust accounts.

## I.

Judge Souder made the following factual findings and conclusions of law:

With respect to Bar Counsel's complaint regarding the general lack of record keeping, it is clear that the respondent maintained a Maryland IOLTA trust account ending in 7646 at the Bank of America.

On November 1st of 2008, he wrote check 1089 in the amount of $5,140.06. The purpose for which Mr. Patterson wrote check 1089 was to close his IOLTA account ending in 7646, as had been recommended to him.

I take judicial notice that November 1st of 2008 was a Saturday. On November 3rd of 2008, Mr. Patterson wrote check 1090 in the amount of $500 on the same account, the account ending 7646.

I take judicial notice of the fact that November 3rd, 2008 was Monday.

Mr. Patterson has testified that he was in the bank when he wrote the check. So, presumably, it was before the bank's normal closing time.

It may be possible that Mr. Patterson was told by a bank teller that his new IOLTA account at the Bank of America ending in 1742 did not have funds available for him to write a check. I say it may be possible, because it seems possible

that the check that he had written on Saturday had not yet been processed or cleared by the Bank of America. Nevertheless, after being told that Mr. Patterson could not write a check on his account ending in 1742, he then wrote a check on 7646.

Again, he may have been told by a bank teller that there were funds available in the account ending in 7646, but that teller would have no way of knowing that on Saturday Mr. Patterson had written a check to close the account.

Mr. Patterson, however, did know that he had written a check in the amount of $5,140.06 to close the account, and I find that Mr. Patterson knew that the funds were not available in the account ending in 7646 at the time he wrote the check.

As a result, at the time Mr. Patterson wrote the check drawn to the trust account ending in 7646, made out to his law firm for $500, that resulted in an overdraft in his IOLTA trust account.

I make all of my findings by clear and convincing evidence.

I do find that Mr. Patterson engaged in a transaction that is prohibited by Rule 16–609(c), which states that, "No funds from an attorney trust account should be dispersed if the dispersement would create a negative balance."

With regard to client matters in the aggregate, in addition, it is clear from the records that have been introduced and admitted into evidence that Mr. Patterson failed to create a record for his IOLTA account that chronologically showed all deposits and dispersements, and by doing so he violated Maryland Rule 16–606.1.

It is clear that Mr. Patterson's records did not show for each deposit the date of the deposit, the amount of the deposit, the identity of the client for whom the funds were deposited and the purpose of the deposit, again in violation of 16–606.1(a)(2)(A).

In addition, with respect to Mr. Patterson's trust account, he did not maintain a record that showed with respect to

dispersements the purpose for which funds were intended, the amount of the dispersement, the payee and the check number, again, in violation of Rule 16–606.1(a)(3)(A).

Insofar as Rule 1.15 refers to this obligation for attorneys to comply with Title 16, Chapter 600 of the Maryland Rules, create and maintain records in accordance with those rules, Mr. Patterson has failed to do so. And so he's in violation of Rule 1.15.

The suggestion that the Attorney Grievance Commission had an obligation to tell Mr. Patterson to read some rules because the records he was submitting were not in compliance with the rules is not well taken because Mr. Patterson is obligated to read the rules and comply with them himself.

He has testified that he was under an attorney monitor agreement. That being the case, it is difficult to understand why Mr. Patterson would not have become an expert in the rules regarding trust accounts by reading them repeatedly until he was sure that he was in full compliance with their provisions.

He has not testified that he read the rules or reviewed the rules, consulted the rules or the cases under the rules, and based on what he has argued here, I could not find that he had bothered to consult the rules. He seems to have relied entirely on his monitor to make sure that he was in compliance. That is not Maryland law.

I found Mr. Moten to be a very credible witness.[1] With respect to the District Court appeal for which Mr. Moten retained Mr. Patterson, Mr. Patterson accepted a retainer in December 2008 in the amount of $2500. The exhibits are clear that he received two money orders at first in the

---

1. Mr. Denver Moten was a client of Respondent and is a complainant in the present attorney grievance matter. The record developed before Judge Souder discloses that Mr. Moten filed an action in the District Court of Maryland sitting in Baltimore City, alleging that his landlord, Bulldog Development, LLC, was overcharging him for utilities. After the District Court found in favor of Bulldog Development, Mr. Moten filed a pro se *de novo* appeal in the Circuit Court and engaged Mr. Patterson to represent him.

amounts of $1000.00 and $400, and then, subsequently, received two additional money orders in the amount of $1000.00 and $100.00, such that by December 31st, 2008, he had been paid [in] full the retainer of $2500 that he requested.

But it does not appear that Mr. Patterson understood the need or urgency of entering his appearance in the matter so that he would be sent a notice by the Court as to the hearing date.

The testimony is undisputed that it was Mr. Moten who kept himself apprised of the hearing date or the status of the matter, and he advised Mr. Patterson of the February 27, 2009, trial date.

Even when Mr. Patterson was advised of this February 27, 2009, hearing date for this de novo appeal, Mr. Patterson still did not enter his appearance. He didn't seek to continue the matter or postpone it because he hadn't had time to get ready. He issued no subpoenas. It doesn't appear that he ever received what had been filed by the District Court, which would have provided him with information as to the names of the witnesses for BGE, who had testified, and their addresses. All that information appears in the exhibits which have been admitted in this Court.

Mr. Patterson apparently had a conversation or he testifies that he had a conversation with Evan Goldman[, evidently, counsel for Bulldog Development,] with respect to the filing of Suggestion of Bankruptcy. The two Defendants in the District Court appeal case were Bulldog Development, LLC, and Devora Sofer. Now, it may be that somehow the Suggestion of Bankruptcy about which Mr. Goldman was talking was relevant to one of those two Defendants, but there is no evidence before this Court that any Suggestion of Bankruptcy with respect to either of those Defendants was ever filed or, in fact, that there ever was a bankruptcy involving either of those Defendants.

Let me see Plaintiff's Exhibit 7 [the case history from the District Court], Mr. Clerk.

718

There is as a result of the Suggestion of Bankruptcy that was filed in March of 2009, so it doesn't appear that there was a bankruptcy on February 27th of 2009.

As a result of the Suggestion of Bankruptcy that was filed, the case was stayed as to Jason Dennis. What relationship he has to this matter is not clear. Mr. Patterson hasn't explained it, what exactly Mr. Dennis' role is in Bulldog Development, LLC.

There is also some paper in the Court file, Plaintiff's Exhibit 7, that there is a debtor by the name of Live Oak Development, LLC. What that has to do with this case, again, I don't know.

But Bar Counsel is right, that in this particular case we don't have any records of any bankruptcy filed by Bulldog Development, LLC, or Devora Sofer.

What happened on February 27th, 2009, is that a default judgment was entered against the two Defendants. The judgment was in the amount of zero. It is not clear to me that even as of today that Mr. Patterson understands what that meant. It certainly did not mean that there was an opportunity to come back to Court and necessarily present some evidence. Not a mandatory, not a matter of right.

The Court file reflects that at some point a judge did vacate the judgment. The case was set for an inquisition, for an opportunity to present damages, and as a result of the fact there was no competent evidence of damages being presented, the judgment remained at zero in this matter.

I did not find Mr. Patterson's testimony credible in many respects during this proceeding. I had the opportunity to observe his demeanor and his way of testifying, as well as his manner of speaking.

To the extent that his testimony diverged from the facts testified to by Denver Moten and Rachelle Lewis, I resolve those issues in favor of Denver Moten and Rachelle Lewis.[2]

---

2. Rachelle Lewis, like Mr. Moten, filed with the Commission a complaint about Respondent. Ms. Lewis had hired Respondent first to

At times in testifying Mr. Patterson was evasive and hesitant. He often did not answer direct questions with direct answers.

To the extent that Mr. Patterson, in the Moten matter, did not issue any subpoenas, did not attempt to present any evidence on February 27th, I believe that he was in violation of Rule 1.1 regarding competence.

I do not find it credible when he said that he prepared certain papers. No such drafts of any papers have been presented here, and I did not find his testimony credible as to the kinds of papers he said that he prepared but then did not serve or did not file or otherwise did not pursue.

I do find that Mr. Patterson then was in violation of Rule 1.1.

With respect to Rule 1.3, Mr. Patterson did not act with reasonable promptness to enter his appearance and prepare the case for the hearing on February 27th, 2009.

So I do find that he's in violation of Rule 1.3.

With respect to the communication, Mr. Patterson did fail to explain to Mr. Moten that a $0 judgment had been entered. Mr. Patterson failed to explain what steps could be taken or what steps were being taken or what bankruptcy effect there was on this case, but I think all of those things have to do with Mr. Patterson's lack of competence in this matter.

It was a lack of written communication regarding the status of the case, but I don't think that attorneys have a legal obligation to regularly send out letters explaining the case.

Mr. Moten did frequently ask for information. I don't believe he was given accurate information about the case.

---

represent her son in a juvenile delinquency matter; later she hired Respondent to represent her son in a civil action arising out of injuries he suffered while in the custody of the Department of Juvenile Services.

I do find that Mr. Patterson failed to explain the matter reasonably necessary to permit Mr. Moten to make informed decisions about the proceeding.

So I do find that Mr. Patterson violated Rule 1.4(B).

To the extent that Mr. Patterson thought that his representation had been terminated, or that he had been fired, he failed to provide any notice to Mr. Moten with respect to that termination of representation.

So he did violate Rule 1.4 in that respect.

Regarding the fees that were paid. Mr. Moten paid the $2500. I find that Mr. Patterson never advised Mr. Moten that he would be charging an hourly rate. I do not believe that Mr. Patterson ever had prepared a retainer agreement or communicated to Mr. Moten that he was to sign it or review it.

I do not believe that Mr. Moten was ever advised of the contents of Plaintiff's Exhibit 14 [an unsigned fee agreement between Respondent and Mr. Moten].

I don't believe that Mr. Moten ever understood there was any fee agreement between him and Mr. Patterson as reflected by Plaintiff's Exhibit Number 14.

The $2500 fee was not unreasonable on its face at the outset of this matter, but when Mr. Patterson failed to enter his appearance promptly upon being paid, and to take steps to apprise himself of the status of the matter and the scheduling of the matter, when he failed to prepare competently for the hearing on February 27th, 2009, or to take steps to confirm whether or not there was a bankruptcy, the $2500 fee did become unreasonable.

I find that Mr. Patterson has violated Rule 1.5(a) based on the quality of representation provided and the lack of any meaningful result obtained.

The collection by Mr. Patterson of the $600 for the execution of the judgment I find was unreasonable on its face at the outset, because there was no judgment. It was clear from Mr. Moten's testimony that he did not even understand that Mr. Patterson had obtained a $0 judgment.

The Defendant performed no meaningful services of any kind with respect to the $600 fee collected from Mr. Moten for the execution of judgment. There was no judgment on which to execute at any time. So the $600 was unreasonable for the amount of services provided and for the results obtained.

With respect to the fact that at the time that the $1400 was paid by Mr. Moten to Mr. Patterson and Mr. Patterson immediately withdrew it, I find that Mr. Patterson violated Rule 1.15(a), because he had done nothing to earn that fee at the time that he withdrew it.

Similarly, with respect to the $1100 paid by Mr. Moten to Mr. Patterson, which Mr. Patterson promptly withdrew, again, there is no record to support that any services had been rendered at the time that the fee was withdrawn. I find that Mr. Patterson had not earned that fee of $1100, and he violated Rule 1.15(a) when he withdrew it.

Because Mr. Patterson never provided any meaningful service regarding the $600 fee paid by Mr. Moten, when Mr. Patterson understood that he was terminated, he was clearly obligated to refund the $600 to Mr. Moten. When he failed to do so, he violated Maryland Rule 1.16(d).

With respect to Rachelle Lewis, at the time that Mr. Patterson filed the complaint, in February of 2008, it appears from that complaint that Mr. Patterson had neglected to perform any kind of services or undertake research, to collect documents to support that complaint such that the complaint appears all by itself on its face to violate Rule 1.1. It's a lack of competence in the drafting of the complaint itself.

The complaint was then dismissed when Mr. Patterson failed to take any action. He failed to respond to the Court notice telling him that there was an intention by the Clerk to dismiss the complaint for lack of action, and, in that regard, Mr. Patterson violated Rule 1.3 by not taking reasonable steps in representing Rachelle Lewis and [her son]. He failed to act with reasonable diligence and

promptness in representing the client with regard to that complaint.

He also failed to expedite that litigation since he undertook no effort to serve process upon either of the Defendants, he undertook no discovery.

I don't find any credible evidence that any reasonable effort was made by Mr. Patterson in connection with the Lewis civil matter to expedite that litigation.

With respect to the filing of the second complaint for Ms. Lewis, about which she was not advised, there is no evidence that Mr. Patterson has undertaken reasonable efforts to diligently prosecute that matter either.

With respect to Mr. Patterson's communications with Ms. Lewis, he clearly failed to advise her that the first civil lawsuit he filed had been dismissed. He did not keep her reasonably informed. He failed to respond in any prompt matter to her telephone calls or to most of her e-mails. He did not communicate to her anything about the notice of contemplated dismissal or the fact that the case was actually dismissed.

Mr. Patterson did not explain to the extent reasonably necessary to Ms. Lewis what was the status of her case until she was deprived of any opportunity to make informed decisions about the litigation.

He accepted the fees from Ruby Lewis. He failed to communicate with her and he understood his client to be [the son of Rachelle] Lewis, and even after [he] had reached the age of majority, [Mr. Patterson] failed to explain to [Rachelle Lewis's son], Ruby or Rachelle Lewis the status of the case that was dismissed or efforts to prepare the second case.

The $3,000 fee that he collected with respect to the Lewis civil case was not unreasonable on its face, but it ultimately became unreasonable because Mr. Patterson did not provide competent services in connection with the civil suit and, clearly, there was a lack of results obtained with respect to the filing of the second lawsuit.

With respect to the payment of the $3,000, Mr. Patterson began withdrawing money almost immediately after the deposit of that money into his trust account, and he kept no time records. None of the documents or the testimony in the case indicate any basis on which the removal of the money from the trust account would have been justified.

As with respect to the other matters, or consistent with the other cases, Mr. Patterson failed to keep adequate records regarding the fee deposited in his trust account and the withdrawals. So he violated Rule 1.15(a).

When Ms. Lewis demanded a refund of the fee that had been paid, Mr. Patterson failed to provide a full accounting of the money that he had received and that he had deposited in his trust account and then dispersed to himself. So he violated Rule 1.15(d).

I don't find Mr. Patterson's testimony credible with respect to efforts to obtain the medical records.

The alleged violation of Rule 1.16 is premised on a belief that he couldn't obtain these medical records from Rachelle Lewis.

So I don't find any violation of Rule 1.16(a).

But Mr. Patterson did violate Rule 1.16(d), when he did not take any steps to strike his appearance if, in fact, he understood that he was being terminated.

With respect to both the Lewis complaint to Bar Counsel and the Pridgen complaint [3] to Bar Counsel, Mr. Patterson failed to respond to the demands of Bar Counsel for information.

Consequently, I find that he violated Rule 8.1(b).

These findings will be transcribed. I think that completes the Court's findings.

---

3. We shall explain, infra at note 16, this reference to "the Pridgen complaint."

## II.

### A.

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Bleecker,* 414 Md. 147, 167, 994 A.2d 928, 940 (2010) (citations omitted). The hearing judge is required to apply the clear and convincing standard of proof when weighing the evidence, in order to establish the facts. Md. Rule 16–757(b);[4] *Attorney Grievance Comm'n v. Siskind,* 401 Md. 41, 54, 930 A.2d 328, 335 (2007). " 'The clear and convincing standard of proof lies somewhere between a preponderance of evidence standard, which is generally applied to civil cases, and beyond a reasonable doubt standard, which is applied to most crimes.' " *Id.,* 930 A.2d at 335 (citations omitted).

" 'We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous.' " *Attorney Grievance Comm'n v. Edib,* 415 Md. 696, 706, 4 A.3d 957, 964 (2010) (citation omitted). That deference is appropriate because the hearing judge is in a position to assess the demeanor-based credibility of the witnesses. *Id.* at 707, 4 A.3d at 964. Moreover, "[t]he hearing judge is permitted to 'pick and choose which evidence to rely upon' from a conflicting array when determining findings of fact." *Attorney Grievance Comm'n v. Guida,* 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006) (citation omitted). We grant no deference to the hearing judge's proposed conclusions of law; those, we review *de novo. Attorney Grievance Comm'n v. Ugwuonye,* 405 Md. 351, 368, 952 A.2d 226, 236 (2008). In other words, "[t]he ultimate determination [ ] as to an attorney's alleged misconduct is reserved for this Court." *Attorney Grievance Comm'n v.*

---

4. Md. Rule 16–757(b) provides:

> (b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or attenuation has the burden of proving the defense or matter by a preponderance of the evidence.

*Garfield,* 369 Md. 85, 97, 797 A.2d 757, 764 (2002) (citations and internal quotation marks omitted).

### B.

Petitioner takes no exception to Judge Souder's factual findings and legal conclusions. Respondent, though, has filed exceptions to Judge Souder's findings of fact and conclusions of law. He challenges, in particular:

(1) Judge Souder's findings of fact in connection with Respondent's handling of his IOLTA account, and the Judge's legal conclusion that he thereby violated Rules 16–606.1 and 16–609, and MRPC 1.15;

(2) Judge Souder's findings of fact in connection with Respondent's handling of the Denver Moten matter and the Judge's conclusion that he thereby violated MRPC 1.1, 1.3, 1.4, 1.5, 1.15, and 1.16; and

(3) Judge Souder's findings of fact in connection with Respondent's handling of the Rachelle Lewis matter and the Judge's legal conclusion that he thereby violated MRPC 1.1, 1.3, 1.15, and 1.16.

Respondent also excepts to Judge Souder's failure to consider and make findings concerning evidence of mitigation. He argues that to redress that failure he is entitled to a remand to Judge Souder, for her to make the requisite findings concerning mitigation. We shall consider each of Respondent's exceptions, in turn.

### 1. *The IOLTA Account*

Respondent takes exception to several of Judge Souder's findings regarding his handling of the IOLTA account. First, he challenges Judge Souder's finding that he "knew that the funds were not available in the account ending in 7646 at the time he wrote the [$500] check." Respondent, notably, does not dispute Judge Souder's finding that he overdrew the 7646 account. Rather, he disputes the Judge's finding that he knowingly did so.

 Maryland Rule 16–609(c) prohibits an attorney from disbursing funds from a trust account "if the disbursement would create a negative balance...."[5] Rule 16–609 does not contain an intent requirement. *See Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997) (explaining that "[c]laimed ignorance of ethical duties and bookkeeping requirements is not a defense in disciplinary proceedings"). Consequently, for purposes of Rule 16–609 it matters not whether Respondent intentionally overdrew the IOLTA account.

 We recognize, though, that "a finding with respect to the intent with which a violation was committed is relevant on the issue of the appropriate sanction." *Awuah,* 346 Md. at 435, 697 A.2d at 454. Therefore, we consider for that purpose whether Judge Souder erred in finding that Respondent knowingly overdrew the account. Judge Souder found that, on November 1, 2008, Respondent wrote a check on the 7646 trust account equal to the entire balance remaining in the account, in order to transfer the funds to a new account. On November 3, 2008, Respondent wrote a separate check for $500 on the 7646 account. Judge Souder found that, based on the November 1 check, Respondent "knew that the funds were not available" for the second, $500 check at the time he wrote it. Respondent argues that he was told by a bank teller on November 3 that the 7646 account balance had not yet been transferred. Even if true, that fact does nothing to undermine Judge Souder's finding that Respondent knew that the account lacked sufficient funds to cover both the November 1 and November 3 checks. We therefore overrule Respondent's exception to Judge Souder's factual finding that he knowingly created a negative balance in his trust account, and, upon our independent assessment of the record, we conclude that Respondent violated Md. Rule 16–609(c).

---

5. Maryland Rule 16–609(c) provides in full: "**Negative balance prohibited.** No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate."

Respondent next argues that the evidence produced at the hearing "did not show that he failed to create records, for deposits and disbursements," and, consequently, he excepts to Judge Souder's conclusion that he violated Md. Rule 16–606.1. Subsection (a)(2) of this Rule requires attorneys to keep a record of their trust accounts "that chronologically shows all deposits and disbursements[.]" Additionally, subsection (a)(3)(A)(iv) requires that every disbursement record include "the payee and the check number or other payment identification[.]"[6] Judge Souder found that Respondent

---

6. Maryland Rule 16–606.1(a) provides in full:

(a) **Creation of records.** The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

(1) Attorney trust account identification. An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature.

(2) Deposits and disbursements. A record for each account that chronologically shows all deposits and disbursements, as follows:

(A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;

(B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;

(C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.

(3) Client matter records. A record for each client matter in which the attorney receives funds in trust, as follows:

(A) for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the balance of funds remaining in the account in connection with the matter; and

(B) an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client.

"failed to create a record for his IOLTA account that chrono-logically showed all deposits and disbursements, and by doing so he violated Maryland Rule 16–606.1."

During Respondent's testimony at the hearing, Bar Counsel asked: "Did you maintain at that time, November 1, 2008, a running chronological ledger of the amount that was main-tained in your attorney trust account ending in 7646?" Re-spondent answered: "If you mean in addition to my statement [from the bank], the answer is no." Moreover, Respondent's "Client Escrow Ledger[s]," which were entered into evidence, do not include all the information required by Rule 16–606.1. Specifically, the ledgers do not describe the "check number or other payment identification" for disbursements. Md. Rule 16–606.1(a)(3)(A)(iv).

We therefore overrule Respondent's exception to Judge Souder's factual findings that he failed to keep his trust account records showing all deposits and disbursements, and we conclude, upon our independent review of the record, that Respondent violated Md. Rule 16–606.1. Respondent's viola-tions of Md. Rules 16–609(c) and 16–606.1, in turn, constitute a violation of MRPC 1.15(a).[7]

### 2. *The Moten Case*

Respondent challenges most of Judge Souder's findings concerning Respondent's handling of the Moten case. First,

---

(4) Record of funds of the attorney. A record that identifies the funds of the attorney held in each attorney trust account as permitted by Rule 16–607 b.

7. MRPC 1.15(a) provides:
 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Mary-land Rules, and records shall be created and maintained in accor-dance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and main-tained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

he challenges Judge Souder's finding that he did not provide competent representation by failing to subpoena witnesses or otherwise be prepared for trial on February 27, 2009. In that regard, he argues that a default judgment was the "proper result" of the litigation. Second, Respondent excepts to Judge Souder's finding that he acted without requisite promptness by failing to enter his appearance in the matter until the February 27 scheduled trial date. Third, Respondent argues that Judge Souder erred in finding that he did not communicate sufficiently with Mr. Moten during the course of the representation and thereby prevented Mr. Moten from making decisions about the case. In that regard, Respondent argues that Judge Souder "failed to set forth exactly what about the matter that Mr. Moten needed to decide...." Fourth, Respondent attacks Judge Souder's finding excessive the fees Respondent charged Mr. Moten (the $2500 fee for handling the *de novo* appeal and the subsequent $600 fee for the supposed bankruptcy matter). Fifth, Respondent asserts that, contrary to Judge Souder's finding, he conducted work on Mr. Moten's case prior to withdrawing funds from his attorney trust account.

Respondent, representing himself, testified at the hearing before Judge Souder. So too did Mr. Moten, as a witness for the Commission. Judge Souder found that Mr. Moten was a "very credible" witness. Judge Souder also stated that she "did not find [Respondent's] testimony credible in many respects during this proceeding." And, "[t]o the extent that his [Respondent's] testimony diverged from the facts testified to by Denver Moten," Judge Souder "resolve[d] those issues in favor of Denver Moten[.]"

Mr. Moten testified that, at the initial meeting with Respondent to discuss the Circuit Court appeal, he provided Respondent with the names of several witnesses who testified on his behalf in the District Court, and he conveyed his desire to have those witnesses called again at the Circuit Court *de novo* trial. Mr. Moten also testified that he learned of the February 27 trial date a few days beforehand, not from Respondent, but from his, Moten's, independent monitoring of the court's

docket. And it was Mr. Moten who informed Respondent of the scheduled trial date, of which Respondent was previously unaware. Mr. Moten further testified that Respondent did not advise him before the trial date that he, Respondent, would be seeking a default judgment on February 27; instead, Respondent advised Mr. Moten that a postponement would be sought "because it was such short notice." Finally, Mr. Moten testified that Respondent did not mention to him that the witnesses who had testified on his behalf at the District Court proceeding now wanted to be compensated.

We defer absolutely to Judge Souder's credibility determinations; therefore, we accept as fact Mr. Moten's version of events as we consider each of Respondent's exceptions. The relevant records of the Circuit Court for Baltimore City were entered into evidence and show that February 27, 2009 was the date the Moten case was scheduled for trial. Judge Souder had before her that information as well as the information gleaned from Mr. Moten's testimony that: (1) Mr. Moten retained Respondent in December 2008 and, by the end of that month, had paid Respondent all of the agreed-upon $2500 fee; (2) Mr. Moten advised Respondent, early on, of the witnesses he wished to be called at trial; (3) Respondent did not enter his appearance in the case until the trial date, February 27, 2009; (4) Respondent did not learn of the looming trial date until Mr. Moten informed him of it several days in advance of it; and (5) Respondent did not give Mr. Moten accurate information about the status of the case; in particular, Respondent did not tell him that the witnesses he wished to have testify at the trial wanted to be compensated as "experts." Based on these facts, we conclude that Judge Souder did not err, much less clearly so, in finding that Respondent did not subpoena witnesses, did not promptly enter his appearance in the case, and did not communicate accurate information to Mr. Moten about the case.

Respondent mentions that he had learned from Evan Goldman, evidently the attorney for Bulldog Development, LLC, that one of the defendants in the Moten case had filed a

suggestion of bankruptcy and would not be present on the February 27 trial date.[8] Respondent suggests that, armed with this knowledge, he reasonably anticipated obtaining an order of default on the trial date.

We have mentioned that Judge Souder did not find Respondent to have been a credible witness; therefore, we cannot assume the truth of Respondent's testimony.[9] Even so, the fact that Respondent was able ultimately to obtain a default judgment (with an award of $0) is irrelevant to whether he violated the rules of professional conduct that mandate competence, diligence, and accurate client communication. *See Attorney Grievance Comm'n v. Zdravkovich,* 362 Md. 1, 25, 762 A.2d 950, 963 (2000) (finding no merit in the respondent's exception based on an argument of "no harm, no foul," and "all is well that ends well"); *Attorney Grievance Comm'n v. Davis,* 375 Md. 131, 162, 825 A.2d 430, 448 (2003) (same). In our independent review of the record, we conclude, as did Judge Souder, that Respondent violated MRPC 1.1 (competence),[10] 1.3 (diligence),[11] and 1.4(b) (communication),[12] by failing to prepare adequately for trial on February 27, 2009.

Judge Souder also concluded that Respondent violated MRPC 1.5(a). That provision states: "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee

---

**8.** In addition to Bulldog Development, LLC, there was at least one individual defendant, Ms. Devora Sofer.

**9.** Indeed, Judge Souder noted from the Circuit Court docket entries that a Suggestion of Bankruptcy had been filed in March 2009, "so it doesn't appear that there was a bankruptcy on February 27th of 2009."

**10.** MRPC 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

**11.** MRPC 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

**12.** MRPC 1.4(b) provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following: . . . (4) the amount involved and the results obtained. . . ." Judge Souder grounded this rule violation "on the quality of representation provided and the lack of any meaningful result obtained." Judge Souder reasoned that Respondent "failed to prepare competently for the hearing on February 27th, 2009," so "the $2,500 fee [Respondent charged Mr. Moten] did become unreasonable." Respondent excepts to those findings. He argues that he obtained "the proper result" at the February 27 hearing, and Judge Souder therefore erred in concluding that the outcome of the case—a default judgment for $0—made the fee unreasonable.

 We disagree. In light of Judge Souder's findings concerning Respondent's lack of competence and diligence in representing Mr. Moten and the result obtained, it was not unreasonable for Judge Souder also to find that the $2500 fee became excessive. *See Guida,* 391 Md. at 52–53, 891 A.2d at 1096 (holding that a fee, not unreasonable on its face, became unreasonable under MRPC 1.5(a), because, through "lack of effort on behalf of [the clients,]" the attorney "fail[ed] to perform the services to any meaningful degree"). But even if we were to grant Respondent his point as far as the $2500 fee is concerned, Respondent cannot ignore that Judge Souder found also that the separate $600 fee Respondent charged Mr. Moten "for the execution of the judgment" was "unreasonable on its face at the outset, because there was no judgment." Judge Souder added that Respondent "performed no meaningful services of any kind with respect to the $600 fee collected from Mr. Moten[.]" Those findings are supported by the record. We therefore overrule Respondent's exception and conclude from our independent review of the record that he violated MRPC 1.5(a).

In addition to finding that Respondent violated MRPC 1.5(a), Judge Souder found that Respondent violated MRPC 1.5(b), albeit Judge Souder did not label her finding as a violation of subsection (b). MRPC 1.5(b) provides: "The

scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation. . . ."[13] Bar Counsel argued to Judge Souder that Respondent violated Rule 1.5(b) because, according to Mr. Moten's testimony, "there was no communication properly to the client and, certainly, not in writing, as to the basis or rate of Mr. Patterson's fees and expenses for this matter." Judge Souder found that Respondent "never advised Moten that he would be charging an hourly rate. I do not believe that [Respondent] ever had prepared a retainer agreement or communicated to Mr. Moten that he was to sign it or review it." Respondent takes no exception to that finding. We therefore conclude, based on our independent review of the record, that Respondent violated MRPC 1.5(a) by charging Mr. Moten an excessive fee, and he violated 1.5(b) by failing to communicate to Mr. Moten the terms of the fee agreement.

Respondent next argues that Judge Souder erred in finding that he violated MRPC 1.15(a) by immediately taking disbursements of funds paid by Mr. Moten despite having done "nothing to earn" those fees. According to Respondent's "Client Escrow Ledger" for Mr. Moten's case, on December 2, 2008, Respondent deposited a $1,400 payment from Mr. Moten. On the same day, Respondent withdrew $1,200 for "file and transcript review." On January 5, 2009, Respondent deposited a $1,100 payment from Mr. Moten, and on the same day withdrew $1,300 for "pleadings prep."

In *Guida*, we instructed:

---

13. MRPC 1.5(b) provides:

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

Funds given in anticipation of future legal services qualify as trust money and, accordingly, are to be deposited in trust accounts separate from the attorney's property, to be removed promptly by the attorney as earned. To deposit such trust money into the attorney's personal or operating accounts before the fees are earned constitutes a violation of MRPC 1.15(a).

391 Md. at 53, 891 A.2d at 1097.

In his testimony, Respondent asserted that he had done work on Mr. Moten's case—presumably "file and transcript review"—before he received the first payment of $1,400. Respondent explained that Mr. Moten had been referred to Respondent by an individual Respondent trusted, so Respondent had no reservations about beginning work on the case before receiving payment. Thus, Respondent argues that he had earned the $1,200 he withdrew on the same day he deposited Mr. Moten's $1,400 payment.

Judge Souder stated that she "did not find [Respondent's] testimony credible in many respects during this proceeding." We surmise that, in finding a MRPC 1.15 violation in connection with the two withdrawals, Judge Souder inferred from the evidence before her that Respondent was not telling the truth when he testified that (1) he had worked on Mr. Moten's case before he was formally retained and received any money from Mr. Moten, and (2) he had done additional work by the time Mr. Moten paid the remainder of the agreed-upon $2500.

■ That said, we cannot overlook that Bar Counsel "has the burden of proving the averments of the petition by clear and convincing evidence." Md. Rule 16–757(b). We are unable to find evidence in the record demonstrating, to a clear and convincing standard of proof, that Respondent failed to perform the "file and transcript review" on Mr. Moten's case before withdrawing the $1,200 fee on December 2, 2008. Nor does Bar Counsel direct us to any such evidence. The same holds true for the $1,300 fee Respondent withdrew on January 5, 2009. The record is devoid of any evidence or testimony that Respondent, contrary to his testimony, did not perform

"pleadings prep" prior to that date. Accordingly, we sustain Respondent's exception and conclude that Judge Souder erred in finding, by clear and convincing evidence, that Respondent violated MRPC 1.15(a) by failing to earn the fees of $1,200 and $1,300 prior to withdrawing those amounts from his trust account.

Finally, Respondent states in his exceptions relating to the Moten case: "The hearing judge found a violation of Rule 1.16(d). She found that Respondent was indeed terminated. Interestingly, her 1.4(b) finding was totally contradictory on this point." We do not understand Respondent's statement to be a formal exception to Judge Souder's finding of a MRPC 1.16(d) violation, which provides:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Judge Souder made the following factual findings concerning the MRPC 1.16(d) violation:

> The Defendant performed no meaningful services of any kind with respect to the $600 fee collected from Mr. Moten for the execution of judgment. There was no judgment on which to execute at any time. So the $600 was unreasonable for the amount of services provided and for the results obtained.

\* \* \*

> Because Mr. Patterson never provided any meaningful service regarding the $600 fee paid by Mr. Moten, when Mr. Patterson understood that he was terminated, he was clearly obligated to refund the $600 to Mr. Moten. When he failed to do so, he violated Maryland Rule 1.16(d).

Upon our independent review of the record, we conclude that Respondent violated MRPC 1.16(d).

In sum, we have overruled all but one of Respondent's exceptions as they relate to his handling of the Moten matter, and, based on our review of the record, we conclude that Respondent violated the following rules: Maryland Rules 16–606.1 and 16–609(c), and MRPC 1.1, 1.3, 1.4, 1.5(a) and (b), and 1.16, but not 1.15(a).[14]

### 3. *The Lewis Case*

In the Lewis matter, Respondent first takes exception to Judge Souder's finding that Respondent's "lack of competence in the drafting of the complaint itself" violated Rule 1.1. We have reviewed the complaint originally filed on February 19, 2008, in the Lewis case, and we sustain Respondent's exception only to the extent that the "drafting of the complaint itself" does not demonstrate a level of incompetence sufficient to violate MRPC 1.1.

The complaint alleges that Rachelle Lewis's son, a minor at the time of the complaint, was injured while in the custody of the Department of Juvenile Services, and the Department and the Juvenile Court had previously been warned about the risk of injury to Respondent, yet no action was taken to prevent such injury. The complaint then asserts claims for negligent entrustment and negligent supervision. To be sure, the complaint contains some technical deficiencies such as no numbering of paragraphs. *See* Md. Rule 2–303 ("Form of pleadings"). The complaint, though, contains at least enough by way of facts and claims such that, in and of itself, the complaint does not demonstrate a lack of competence warranting a finding of a violation of MRPC 1.1.

---

14. Although we conclude that Respondent did not violate MRPC 1.15(a) in connection with the charge that, in the Moten case, he withdrew money from the account before earning it, we concluded, earlier in this opinion, that Respondent violated 1.15(a) in connection with his handling of the IOLTA account.

Although the complaint itself does not demonstrate incompetence, we accept as not clearly erroneous Judge Souder's finding that Respondent failed to pursue the Lewis claim after filing the complaint, thereby demonstrating incompetence and insufficient diligence in the matter, in violation of MRPC 1.1 and 1.3 respectively. Specifically, Judge Souder found both that Respondent "neglected to perform any kind of services or undertake research, to collect documents to support the complaint," and that "[t]he complaint was then dismissed when [Respondent] failed to take any action."

Respondent filed the complaint on February 19, 2008. The Circuit Court records of the Lewis case were entered into evidence. Those records show that a "Notification of Contemplated Dismissal[,]" dated April 24, 2009, was sent to all parties, including Respondent. Respondent filed no motion to prevent dismissal, and the case was subsequently dismissed for lack of prosecution. We conclude, based on that evidence, that Respondent violated MRPC 1.1 and 1.3 in that he neither competently nor diligently pursued Lewis's case.

Respondent did not take exception to Judge Souder's finding in her written order that he violated MRPC 3.2. That Rule provides: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Judge Souder, although not explicitly casting it in terms of MRPC 3.2, nonetheless found that Respondent "failed to expedite [the Lewis] litigation since he undertook no effort to serve process upon either of the Defendants, he undertook no discovery." The record supports that finding. We therefore conclude that Respondent violated MRPC 3.2.

Similarly, Respondent does not take exception to Judge Souder's finding that, "[w]hen Ms. Lewis demanded a refund of the fee that had been paid, [Respondent] failed to provide a full accounting of the money that he had received and that he had deposited in his trust account and then dispersed to himself. So he violated [MRPC] 1.15(d)." [15] Based on our

---

**15.** MRPC 1.15(d) provides:

independent review of the record, we conclude that Respondent violated MRPC 1.15(d).

Respondent next takes exception to Judge Souder's finding that, in the Lewis case, Respondent "violate[d] Rule 1.16(d), when he did not take any steps to strike his appearance if, in fact, he understood that he was being terminated." We sustain Respondent's exception only to the extent that Judge Souder's statement is an actual finding of a rule violation. Judge Souder's statement indicates that Respondent violated MRPC 1.16(d) "if" he believed that his representation of Lewis was terminated. In other words, the finding is conditional. Because Judge Souder did not address whether Respondent, in fact, "understood that he was being terminated," the finding does not provide a sufficient basis for us to conclude that Respondent violated MRPC 1.16(d) in the Lewis case.

In sum, we have sustained Respondent's exceptions to the MRPC 1.16(d) violation, and one aspect of Respondent's exception concerning the MRPC 1.1 violation. We conclude, upon our independent review of the record, that it supports Respondent's violations of MRPC 1.1, 1.3, 1.15(d), and 3.2, in connection with his mishandling of the Lewis case.

### 4. *The MRPC 8.1 Violation*

MRPC 8.1 provides, inter alia, that "a lawyer . . . in connection with a disciplinary matter, shall not . . . (b) . . . knowingly fail to respond to a lawful demand for information from . . . [a] disciplinary authority[.]" Judge Souder concluded that Respondent violated MRPC 8.1, because "[w]ith respect to both the Lewis complaint to Bar Counsel and the Pridgen com-

---

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

plaint [16] to Bar Counsel, [Respondent] failed to respond to the demands of Bar Counsel for information." Respondent does not challenge Judge Souder's conclusion that he violated MRPC 8.1, and we find uncontroverted evidence in the record that he did. Consequently, we conclude that Respondent violated MRPC 8.1, in addition to the rule violations already mentioned.

## C.

### Mitigation

Respondent excepts to Judge Souder's failure to make any finding regarding mitigation, despite Respondent's having asserted mitigation at the hearing. The primary mitigating factor raised by Respondent is that he suffers from multiple sclerosis ("MS"). At the hearing below, and in his exceptions to Judge Souder's findings, Respondent contends that his MS caused, to some degree, his failure to respond to inquiries from Bar Counsel. Respondent explained in his testimony before Judge Souder that stress can worsen his MS symptoms, which include pain and difficulty of movement in his extremities. According to Respondent's testimony, stress brought on by Bar Counsel's investigation caused him to suffer severe pain and immobility, so he decided that he "would wait to answer [Bar Counsel's] complaints until [he] was stronger. And that was not a good decision."

---

16. The record before us discloses very little about the Pridgen complaint to Bar Counsel. What we do know is that, at the hearing before Judge Souder, Bar Counsel offered into evidence a letter from Bar Counsel to Respondent, dated December 7, 2009, notifying Respondent that Mr. Phillip M. Pridgen, Sr. had sent correspondence to Bar Counsel, and requesting that Respondent respond within fifteen days. Also offered into evidence was a second letter from Bar Counsel to Respondent, dated January 5, 2010, stating that Bar Counsel had not received a response to the December 7, 2009 letter, and requesting a response within ten days. Respondent did not object to the admission into evidence of either letter, and Judge Souder admitted both. The substance of Mr. Pridgen's correspondence to Bar Counsel is not in the record. Aside from the failure to respond to Bar Counsel's inquiry, Bar Counsel, in its Petition for Disciplinary or Remedial Action, alleges no other misconduct on Respondent's part relating to Mr. Pridgen.

At oral argument before this Court, Bar Counsel acknowledged that Judge Souder did not address any mitigating factors, including Respondent's MS. While still arguing that Respondent violated MRPC 8.1(b) by knowingly failing to respond to demands for information regarding the alleged misconduct, Bar Counsel conceded that Respondent's MS is a mitigating factor for purposes of the 8.1(b) violation. Based on that concession, we hold that Respondent established his MS as a mitigating factor for his violation of MRPC 8.1(b).[17] As a result, Respondent's requested remand to Judge Souder for findings regarding mitigation is unnecessary.

## III.

Thus far, we have addressed Respondent's exceptions and determined that Respondent violated Md. Rules 16–606.1 and 16–609(c), and MRPC 1.1, 1.3, 1.4(b), 1.5(a) and (b), 1.15(a) and (d), 1.16(d), 3.2, and 8.1(b). Our next and final task is to determine the appropriate sanction in this case. In *Bleecker*, 414 Md. at 176, 994 A.2d at 945, we described the purpose of sanctions in disciplinary cases:

> We evaluate every attorney grievance matter on its own merits, taking into account the facts and circumstances involved. We have consistently iterated that the goal of attorney discipline is protection of the public, rather than the punishment of the erring attorney. We protect the public through sanctions against offending attorneys in two ways: through deterrence of "the type of conduct which will not be tolerated," and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State. The public is protected when the sanction imposed is commensurate with the nature and gravity of the violations and the intent with which they were committed. Therefore, we must consider the nature of the

---

17. To the extent that Respondent's exception could be interpreted as challenging Judge Souder's failure to find that Respondent's MS mitigated any of the other violations, we overrule it. The transcript of the hearing before Judge Souder reflects that Respondent asserted that his MS inhibited only his ability to respond to Bar Counsel.

ethical duties violated in light of any aggravating or mitigating circumstances.

(Citations omitted.)

Petitioner recommends a sanction of indefinite suspension, with a minimum of six months before Respondent may apply for reinstatement. In support of that recommendation, Petitioner cites *Attorney Grievance Comm'n v. David*, 331 Md. 317, 628 A.2d 178 (1993), and *Attorney Grievance Comm'n v. Lee*, 393 Md. 385, 903 A.2d 360 (2006).

In *David*, the respondent attorney violated MRPC Rules 1.1, 1.3, 1.4, 1.5, 1.15, 1.16, 5.3, 8.1, and 8.4(a), (c) and (d), in connection with his handling of four cases. In the first case, the respondent accepted a retainer fee for a domestic relations case but did not diligently pursue the case; he ignored the client's repeated requests for information; and he did not provide information about the case or refund to the client the unearned retainer, following his discharge from the case. *Id.* at 319–20, 628 A.2d at 179. In the second case, the respondent did not diligently pursue an automobile tort claim and did not notify his client when he received a settlement check for the client from an insurance company. *Id.* at 320–22, 628 A.2d at 179–80. In the third case, the respondent did not diligently pursue a client's automobile tort claims; he ignored the client's requests for updates regarding the case; and, after being discharged by the client in favor of new counsel, he did not provide information about the case to the client's new counsel despite repeated requests for such information. *Id.* at 322, 628 A.2d at 180–81. And, in the fourth case, the respondent did not diligently pursue a client's divorce claim; he misled the client about the status of the case; and he did not respond to the client's inquiries about the case. *Id.* at 323, 628 A.2d at 181. We imposed the sanction of indefinite suspension with a right to apply for reinstatement no sooner than six months, and any such reinstatement would be conditioned on the respondent's practice being monitored for a period of at least two years. *Id.* at 323–24, 628 A.2d at 181.

In *Lee*, the respondent attorney violated MRPC 1.3, 1.4(a), 8.1(a), and 8.4(c) in his representation of a client in a post-conviction matter and during a resulting investigation by Bar Counsel. 393 Md. at 414, 903 A.2d at 378. The attorney did not pursue diligently the case over a two-year period; he did not respond to numerous requests by the client for information; and he misled Bar Counsel by asserting that his inactivity in the case was caused by the "unavailability of transcripts and that the Complainant was tardy in delivering case materials to" the attorney. *Id.* at 409, 903 A.2d at 375. After finding no mitigating factors and reviewing previous attorney discipline cases involving similar misconduct, we imposed an indefinite suspension. *Id.* at 415, 903 A.2d at 378.

Respondent recommends as an appropriate sanction "that a public reprimand be issued with a directive for services to the Maryland Attorney's Service Agency ... or a comparable organization." No cases are cited in support of that recommendation. We believe that a sanction more severe than a reprimand is appropriate given Respondent's numerous violations in connection with his handling of clients' money; his representation of clients in two cases; and his admitted "mistake" in failing to respond to Bar Counsel's repeated requests for information (although mitigated to a degree by Respondent's MS). *See Lee*, 393 Md. at 414, 903 A.2d at 378 ("The intentional dishonesty committed by Respondent in his communication with Bar Counsel makes a reprimand inappropriate.").

We are guided by our decision in *Attorney Grievance Comm'n v. Granger*, 374 Md. 438, 460, 823 A.2d 611, 624 (2003), where we said: "This Court has often issued sanctions of an indefinite suspension for various lengths for multiple violations of the MRPC not involving the intentional misappropriation of money." In *Granger*, the attorney represented a client facing foreclosure. After an initial consultation with the client, the attorney agreed to file promptly a bankruptcy petition on the client's behalf to delay or prevent the foreclosure. The attorney did not file the bankruptcy petition in time, but he told his client that it had been filed and that her

home was safe from foreclosure. Because the petition was not filed in time, the client's house was sold through foreclosure. The attorney subsequently misrepresented to Bar Counsel, during its investigation, that his delay in filing the petition was due to his client not bringing him documents that he specifically requested from her. *Id.* at 443–47, 452, 823 A.2d at 614–17, 619 (restating the hearing judge's findings of fact and affirming those findings). We imposed an indefinite suspension with the right to apply for reinstatement no sooner than six months. *Id.* at 462, 823 A.2d at 625.

██ Respondent's conduct in the present case is in line with that of the attorneys in *David, Lee,* and *Granger.* Like the attorney in *David,* Respondent committed numerous MRPC violations in the course of representing clients in several cases. In *David,* the attorney did not diligently pursue his clients' cases, failed to communicate sufficiently with his clients, mismanaged his client funds in his trust account, and did not respond to repeated requests by Bar Counsel for information about the cases. Respondent's misconduct here is quite similar. Moreover, like the attorneys in *Lee* and *Granger,* Respondent did not diligently pursue his clients' cases; he did not respond to his clients' repeated requests for information about the status of their cases; he blamed his delay on his alleged clients' failure to supply certain documentation rather than on his own idleness; and he did not respond to Bar Counsel's inquiries. We recognize Respondent's MS as a mitigating factor for his unresponsiveness towards Bar Counsel, though it does not altogether excuse his inaction.

Considering the totality of Respondent's misconduct, and our prior decisions in attorney discipline matters involving similar misconduct, we are led to conclude that the proper sanction in this case is an indefinite suspension with the right to apply for readmission no sooner than six months after the imposition of the suspension.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS**

COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RO-LAND N. PATTERSON.